Lowman Verben LOWE, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–05–00225–CR.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 4, 2006.

Decided Nov. 29, 2006.

Discretionary Review Refused March 21, 2007.

Cynthia Braddy, Sulphur Springs, for appellant.

Kelli M. Aiken, Asst. Dist. Atty., Greenville, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Lowman Verben Lowe appeals from his conviction for aggravated assault with a deadly weapon. A jury convicted him and assessed his punishment at seven years' imprisonment. Lowe alleges error is presented on several matters: (1) failing to properly instruct the jury on the law of apparent danger, (2) ineffective assistance of counsel, (3) factual insufficiency of the evidence to support the guilty verdict because the State did not disprove self-defense, and (4) legal and factual sufficiency of the evidence supporting the jury finding that Lowe used a deadly weapon. We affirm the judgment of the trial court.

**Background Facts**

The record indicates that the victim, Terrance Colbert, has a mental condition that causes him to be combative unless he regularly takes his medication and that he is at best sporadic in his use of prescribed medications for that condition. Colbert testified he had been hospitalized for mental conditions a number of times. Antonio Landers was one of a group of three or more juveniles who, Colbert thought, wanted to fight him. Colbert called police and reported that some juveniles were "picking on him." A police officer arrived and talked to the group in an attempt to calm them down, and then the officer left.

Lowe (Antonio's father) drove up and asked Colbert whether they were fighting. Colbert told Lowe no, and then Colbert turned away to argue with yet another person. As that argument progressed, Colbert realized that he had been cut in the throat because he saw the blood. He identified Lowe as the person who had cut him. Colbert testified that he then ran away and that the man who cut him (Lowe) chased him. This incident occurred on Church Street and Colbert went to a different street for help, where someone called an ambulance which took him to the hospital. Colbert testified he felt no pain until after the cut was treated at the hospital. Officer James Hamilton testified that, when he arrived, Colbert was bleeding severely and that Hamilton was afraid he would bleed out and die before an ambulance arrived.

Lowe also testified. Although he admitted cutting Colbert, his version of how the events transpired was markedly different. Lowe testified that he took Helen Landers, Antonio's mother, to the house on Church Street because she told him someone was "trying to jump on" their son. While she was calling the police, Lowe circled the block. When he got back around, he saw Colbert arguing with Ms. Landers. Lowe testified he recognized Colbert as the person who, a few nights before, had been bragging about not being afraid of anybody and how he would cut anyone with his box cutter. Lowe testified that he tried to defuse the situation because he was worried about Ms. Landers and that Colbert then began cursing him. Lowe testified that Colbert was trying to stick his hand in his pocket and that, when Lowe turned to leave, Colbert swung at him. At that time, Lowe thought Colbert was trying to cut him, so he tried to catch Colbert's arm, and then he, Lowe, Ms. Landers, and Billie (a mother of another juvenile) all fell to the ground. Lowe admitted he could not tell what Colbert had in his hand because his back was turned.

Lowe pulled out his own pocketknife, and Colbert was cut during the fracas. Colbert stood up and ran. Lowe gathered his tools and then went to the police station and turned himself in.

### 1. Apparent Danger Jury Charge

■ Lowe first contends the trial court committed reversible error by failing to provide the jury with a correct instruction on the law of apparent danger. As noted above, Lowe admitted cutting Colbert, but argued that he was entitled to a charge on self-defense and apparent danger because of his reasonable fear that Colbert was using a box cutter. Lowe argues that the charge was inadequate because it did not correctly instruct the jury on the law of apparent danger. This area of the law is one that this Court has had occasion to revisit repeatedly. *Walters v. State*, 206 S.W.3d 780 (Tex.App.-Texarkana 2006, no pet. h.); *Wilson v. State*, 179 S.W.3d 240, 252 (Tex.App.-Texarkana 2005, no pet.).

Lowe complains the charge, as given, did not adequately inform the jury that apparent danger was to be measured from the standpoint of the defendant alone, or to state that, if Lowe reasonably believed from that standpoint that Colbert was using deadly force against him, the jury should acquit.[1] The charge reads as follows: .

> Upon the law of self defense you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself or a third person against the other's use or attempted use of unlawful force and he reasonably believes to be threatening the third person he seeks to protect, and the actor reason-

ably believes that his intervention is immediately necessary to protect the third person.

> The use of force against another is not justified in response to verbal provocation alone.

> A person is justified in using deadly force against another:

>> (1) if he would be justified in using force against the other; and

>> (2) if a reasonable person in the defendant's situation would not have retreated; and

>> (3) when and to the degree he reasonably believes the deadly force is immediately necessary;

>>> (a) to protect himself against the other's use or attempted use of unlawful deadly force; . . .

> . . . .

> "Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant.

> . . . .

> Now, therefore, . . . if you believe from the evidence beyond a reasonable doubt . . . but you further find from the evidence, or have a reasonable doubt thereof, that the defendant reasonably believed as viewed from his standpoint alone that deadly force when and to the degree used, if it was, was immediately necessary to protect himself or a third person he seeks to protect against the use or attempted use of unlawful deadly force to prevent the imminent commission by the said Terrance Regal Colbert of aggravated assault; and that at such time a reasonable person in the defendant's situation would not have retreated, you will acquit the defendant. . . .

---

1. Counsel correctly points out that the Texas Court of Criminal Appeals has recognized that a person has the right to defend against apparent danger to the same extent as if the danger was real. *See Hamel v. State,* 916 S.W.2d 491, 493 (Tex.Crim.App.1996).

You are further instructed, however, that if you believe from the evidence beyond a reasonable doubt that at the time and place in question the victim was not using or attempting to use unlawful force on a third person, and that the defendant did not reasonably believe that deadly force when and to the degree used, if it was, was immediately necessary to protect a third person against the use or attempted use of unlawful deadly force, either real or apparent, as viewed from his standpoint alone, or that a reasonable person in the defendant's position at that time would have retreated, then you will find against the defendant on his plea of self-defense.

■ The standard of review for errors in the jury charge depends on whether the defendant properly objected. *Mann v. State*, 964 S.W.2d 639, 641 (Tex.Crim.App. 1998); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g); *Gornick v. State*, 947 S.W.2d 678, 680 (Tex. App.-Texarkana 1997, no pet.). If a proper objection was raised, reversal is required if the error is "calculated to injure the rights of defendant." *Almanza*, 686 S.W.2d at 171. In other words, an error that has been properly preserved is reversible unless it is harmless. *Id.*

In this case, no objection was raised—thus, assuming that we find error, we must also find that it was egregious. This case raises issues quite similar to those we discussed in our recent opinion in *Wilson*. In that case, the appellant claimed the trial court erred in failing to instruct the jury on the doctrine of apparent danger. Wilson made written requests for jury charge instructions, one of which would have contained language that a person "has a right to defend his life and person from appar-

ent danger...." *Wilson*, 179 S.W.3d at 252. The trial court refused the proposed language and instead gave an instruction on self-defense containing definitions of "reasonable belief," "deadly force," and an instruction on when a person is justified in using deadly force.

In the present case, no additional instructions were requested, and the court did give a definition of reasonable belief, deadly force, and self-defense, including justification for the use of force.

In *Valentine v. State*, 587 S.W.2d 399, 401 (Tex.Crim.App. [Panel Op.] 1979), the Texas Court of Criminal Appeals held that the concept of apparent danger was properly presented to the jury where the charge instructed that the defendant's conduct would be justified if he or she reasonably believed that the deceased was using or attempting to use unlawful deadly force against the defendant at the time of the shooting. *Id.* The court also defined the term "reasonable belief."[2] In *Valentine*, the Texas Court of Criminal Appeals held that, by defining the term "reasonable belief" as it did, the court instructed the jury that a reasonable apprehension of danger, whether it be actual or apparent, is all that is required before one is entitled to exercise the right of self-defense against his or her adversary. *Id.* The jury charge in the present case instructed the jury that Lowe's conduct was justified if he reasonably believed that Colbert was using unlawful deadly force against either him or a third person.

Error has not been shown. The contention of error is overruled.

### 2. Ineffective Assistance of Counsel

Lowe next contends that his counsel was ineffective, under the *Strickland* stan-

---

**2.** "Reasonable belief" was defined in *Valentine* as "a belief that would be held by an ordinary and prudent person in the same cir-

cumstances as the defendant." *Valentine*, 587 S.W.2d at 401. In the instant case, the trial court used exactly the same definition.

dards, because he did not object to the charge in connection with the apparent danger issue, and also because he did not adequately bring that defense to the jury's attention. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on this claim, an appellant must prove by a preponderance of the evidence (1) that counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the appellant's defense. We have concluded that the charge was not erroneous. In the absence of error by counsel, we cannot conclude that he was constitutionally ineffective for failing to object to the charge.

■ As far as strategic or tactical reasons for counsel's action or inaction, in the absence of direct evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can be imagined. *Garcia v. State,* 57 S.W.3d 436, 440 (Tex.Crim.App. 2001). We will not conclude the challenged conduct constitutes deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Id.; see Thompson v. State,* 9 S.W.3d 808, 814 (Tex.Crim.App. 1999). The fact that counsel did not emphasize a particular aspect of the proceeding in argument to the jury is not a matter that this Court can readily analyze, especially when the matter was raised—but not to the extent that appellate counsel, with the benefit of hindsight, would find most effective. We are not convinced from the record before us that the challenged conduct was so outrageous that no competent attorney would have engaged in it.

The contention of error is overruled.

### 3. Factual Insufficiency—Disprove Self–Defense

■ Lowe next contends the evidence is factually insufficient to support the verdict because the State did not adequately disprove his claim of self-defense beyond a reasonable doubt.

■ The defendant has the initial burden of producing evidence to raise self-defense. Then the State has the final burden of persuasion to disprove it. *Saxton v. State,* 804 S.W.2d 910, 914 (Tex. Crim.App.1991). The State is not obligated to offer evidence refuting a claim of self-defense; rather, the State is required merely to prove its case beyond a reasonable doubt. *Saxton,* 804 S.W.2d at 914.

■ Self-defense is a fact issue to be determined by the jury. *Id.* at 913–14. As the trier of fact, the jury is the sole judge of the credibility of the witnesses and is free to believe or disbelieve all, part, or none of any witness' testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim. App.1986). "A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory." *Saxton,* 804 S.W.2d at 914. In conducting a factual sufficiency review, we view the evidence in a neutral light and will set aside the verdict only if the jury was not rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State,* 204 S.W.3d 404 (Tex. Crim.App.2006).

Counsel points out a number of possible shortcomings in the State's investigation of the incident—a failure to search the area for a discarded box cutter and a failure to obtain names and statements from witnesses. There was evidence of the injury, the type of injury, and the person who inflicted it, as well as the surrounding circumstances. There was no evidence that Colbert had a weapon at the time, even though there was evidence that he had made threatening comments in general at an earlier time and claimed that he carried one (evidently while exhibiting it). Never-

theless, the jury was within its purview to review the evidence and determine that Lowe did not exercise deadly force in defense of either himself or a third party, and that the evidence of justification because of apparent danger was not sufficient to support his self-defense theory.

The contention of error is overruled.

### 4. Sufficiency of Evidence on Deadly Weapon Finding

■■■ Lowe next contends there is factually and legally insufficient evidence to sustain the jury finding that the knife, in its use *and* intended use, was a deadly weapon. His argument is based on the differing language found in the jury charge. The indictment alleged that the knife was a deadly weapon because of the manner of "its use *and* intended use." (Emphasis added.) The jury charge defined a deadly weapon as anything that in the manner of "its use *or* intended use" can cause death or serious injury. (Emphasis added.) The application section of the charge tracked the indictment, directing the jury to find him guilty if he used a deadly weapon that "in the manner of its use *and* intended use" can cause death or serious injury. (Emphasis added.)

Lowe argues the application paragraph of the jury charge raised the burden of the State and required it to prove that Lowe used the knife and intended the knife to be used as a deadly weapon. We disagree. Section 1.07(a)(17)(B) defines deadly weapon as: "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon Supp.2006). The Texas Court of Criminal Appeals has recently commented on the meaning of this section.

■■■ The provision's plain language does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury. *Bailey v. State*, 38 S.W.3d 157, 159 (Tex.Crim.App.2001) (quoting *McCain v. State*, 22 S.W.3d 497, 503 (Tex.Crim.App.2000)).

Here, the jury was charged that, to find Lowe guilty of using a deadly weapon, the State was required to prove that Lowe used a knife to cause bodily injury to Colbert and in the manner that Lowe used and intended to use the knife, the knife was *capable* of causing death or serious bodily injury. The jury did not have to conclude Lowe used the knife and *intended* the knife to be used as a deadly weapon.

In reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). In a factual sufficiency review, the appellate court views all the evidence in a neutral light and determines whether the evidence supporting the verdict is so weak that the jury's verdict is clearly wrong and manifestly unjust or whether the great weight and preponderance of the evidence is contrary to the verdict. *Id.; see Watson*, 204 S.W.3d 404; *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim.App.1996).

■■■ A knife is not a deadly weapon per se, and as such, the jury was instructed that a deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (defining a deadly weapon); *McCain*, 22 S.W.3d at 503 (holding that "the mere carrying of a butcher knife

during such a violent attack ... was legally sufficient to show that the butcher knife was a deadly weapon"). Factors to consider in determining whether the knife was capable of causing death or serious bodily injury include (1) the size, shape, and sharpness of the knife; (2) the manner in which the appellant used the weapon; (3) the nature or existence of inflicted wounds; (4) testimony of the knife's life-threatening capabilities; (5) the physical proximity between the victim and the knife; and (6) the words spoken by the appellant. *See, e.g., Thomas v. State,* 821 S.W.2d 616, 619–20 (Tex.Crim.App.1991); *Tisdale v. State,* 686 S.W.2d 110, 115 (Tex.Crim.App.1984) (op. on reh'g).

The phrase "used ... a deadly weapon" during the commission of the offense means only that the deadly weapon was employed or utilized in order to achieve its purpose. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (Vernon Supp.2006); *Patterson v. State,* 769 S.W.2d 938, 941 (Tex. Crim.App.1989).

There is no question that the weapon was a knife and that it was used to cut Colbert's throat. The evidence shows that Colbert was bleeding profusely and that his blood was all over the crime scene. Officer Hamilton followed a trail of Colbert's blood, and found onlookers mopping up the blood. Hamilton described Colbert as bleeding profusely and said that he was afraid Colbert would bleed out and die before help could arrive. This is both legally and factually sufficient to support the jury's determination that the knife was, in the manner of its use and intended use, capable of causing death or serious bodily injury and, thus, a deadly weapon. The contention of error is overruled.

We affirm the judgment.