*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★  ★ ★ ★

# OPINION

No. 04-07-00247-CR

Juan **RIVERA**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 06-08-11940
Honorable Richard C. Terrell, Judge Presiding

Opinion by:     Steven C. Hilbig, Justice
Dissenting opinion:  Phylis J. Speedlin, Justice

Sitting:       Alma L. López, Chief Justice
            Phylis J. Speedlin, Justice
            Steven C. Hilbig, Justice

Delivered and Filed:   August 13, 2008

REVERSED AND REMANDED

A jury convicted appellant Juan Rivera, Jr. of aggravated assault with a deadly weapon.  On

appeal, appellant contends the evidence is legally and factually insufficient to establish he used or

exhibited a deadly weapon.  Because we agree the evidence is factually insufficient to sustain the

deadly weapon finding, we reverse and remand for a new trial.

## BACKGROUND

Justin Lerma, the complainant, was at his mother-in-law's home with his friend, "Mike." Lerma testified he and Mike were outside the home when "these guys just showed up." The "guys" included Mark Guerra, Oscar Carrillo, and appellant. According to Lerma, Carrillo began verbally harassing Mike and him. Lerma stated, "I don't want no problems here," but Carrillo advanced toward him and was intercepted by Mike. Then, according to Lerma, appellant "came around and stabbed me from the back and around my stomach." The evidence showed Lerma attempted to flee, but appellant continued to attack Lerma. Lerma testified he was stabbed "seven or eight" times in his back, stomach, and arm. While Lerma admitted he did not see the weapon used to stab him, his mother-in-law, Teresa Ann Uribe, testified appellant stabbed Lerma with a "pocket knife."

During the altercation, Uribe called 911. Sergeant Odel S. Mendoza was dispatched to respond to "an assault in progress." There were no arrests immediately following the assault, but appellant was ultimately arrested and charged by indictment with aggravated assault with a deadly weapon. After hearing the evidence, the jury convicted appellant of the charged offense. The trial court sentenced him to four years imprisonment.

## ANALYSIS

Appellant argues the evidence is legally and factually insufficient to sustain his conviction because the State failed to prove he used a deadly weapon as defined by the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon Supp. 2007).

### *Standard of Review*

When reviewing the evidence for legal sufficiency, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 729-

30 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005). Any inconsistencies in the testimony must be resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). However, when reviewing the evidence for factual sufficiency, we review all of the evidence in a neutral light and set aside the verdict only if "the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met." *Garza v. State*, 213 S.W.3d 338, 344 (Tex. Crim. App. 2007).

### *Substantive Law*

A person commits an assault if he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon Supp. 2007). The assault is aggravated when the person uses or exhibits a deadly weapon during the assault. *Id*. § 22.02(a)(2). A deadly weapon is one that "in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id*. § 1.07(a)(17)(B). "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46). "Bodily injury" is "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8).

"Although a knife is not a deadly weapon per se, it has been held that it can qualify as such through the manner of its use, its size and shape and its capacity to produce death or serious bodily injury." *Limuel v. State*, 568 S.W.2d 309, 311 (Tex. Crim. App. [Panel Op.] 1978); *see Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991) (holding that kitchen knives, utility knives, straight razors, and eating utensils are not deadly weapons per se); *see also* TEX. PENAL CODE ANN. § 1.07(a)(17)(B). An object is a deadly weapon if the injuries produced result in death or serious

bodily injury. *See Tyra v. State*, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995). But if a knife did not cause serious bodily injury or death, to qualify as a deadly weapon the evidence must prove "the actor intend[ed] a use of the [knife] in which it would be **capable** of causing serious bodily injury." *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (emphasis added). The State may establish the knife was capable of causing death or serious bodily injury through witnesses' descriptions of the knife's size, shape, and sharpness; testimony of the knife's life-threatening capabilities; the manner in which the knife was used; the words spoken by the defendant; the physical proximity between the victim and the knife; and the nature of any wounds caused by the knife. *Lowe v. State*, 211 S.W.3d 821, 827 (Tex. App.–Texarkana 2006, pet. ref'd); *Victor v. State*, 874 S.W.2d 748, 751-52 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd). Expert testimony is not required but it may be useful when the evidence on the deadly nature of the knife is meager. *Davidson v. State*, 602 S.W.2d 272, 273 (Tex. Crim. App. [Panel Op.] 1980). Clearly, whether a particular knife is a deadly weapon depends upon the evidence. *Thomas*, 821 S.W.2d at 620.

### *The Relevant Evidence*

The evidence regarding the knife used in this assault is meager. The knife was never recovered. Three witnesses offered testimony about the knife used to stab Lerma and the resulting wounds. Sergeant Odel S. Mendoza testified that when he arrived at the scene he observed that Lerma had several wounds. He saw wounds on Lerma's stomach, back area, and rib area and described some of them as "gaping." When he questioned Lerma, Lerma stated he had been "stabbed with a knife." Although Sergeant Mendoza testified he had been trained to determine if wounds are indicative of having been caused by a knife and had investigated several incidents dealing with knife wounds, he did not provide any testimony about the nature of the knife used in

the attack based upon his observation of Lerma's wounds. He opined that a knife could be a deadly weapon depending on the manner in which the knife was used. Pictures of Lerma's wounds taken at the hospital demonstrate three wounds: two on Lerma's abdomen and one on the back of his upper left arm.

Lerma admitted he never saw the weapon but he stated "it felt like a knife . . . because it was going in like nothing." He testified he received seven to eight wounds on his back, stomach, and arms. Lerma testified Oscar Carrillo stabbed him at least one time with a beer bottle. The evidence shows Lerma was treated at the scene by EMS and later went to the hospital by private vehicle. At the hospital, he was told "it was too late to stitch [him] up," so they "cleaned his wounds and "put a stick- -- like little stickers that are like stitches." Lerma testified he was then given pain medication and released. Lerma testified he missed work for approximately one month because he "was in a lot of pain." He further testified that his back still hurt when it was cold.

The only person who testified to seeing the knife was Uribe. She initially testified she saw appellant stab Lemma one time with a "pocket knife." However, when asked how she was able to see the knife when no one else did, Uribe stated she was able to see the knife "[b]ecause of the reflection of the blade, of the point, the reflection of the light." She testified she could see the blade of the knife, but not the handle. When asked if she was able to recognize the object as a pocketknife she responded "[w]ell, not particularly what it was, but yeah." She offered no further description as to the type of knife or the length of the blade.

### *Legal Sufficiency*

We initially conclude the evidence is legally sufficient to establish Rivera used a deadly weapon. As to the "manner of use" prong of the deadly weapon definition, Lemma testified he was

"stabbed." Uribe testified she saw appellant stab Lemma. By common usage and understanding, the jury could rightly conclude Rivera used the knife in a plunging rather than slashing motion. Such actions are sufficient to support the jury's finding that the knife was **used** in a manner capable of causing serious bodily injury. As to the "capacity" prong of the deadly weapon definition, there is some evidence that Lemma may have suffered serious bodily injury. Lemma testified he was stabbed, that his wounds required some hospital treatment, and that the pain kept him out of work for a month. The jury could have concluded from this evidence that the knife caused serious bodily injury because of the "protracted loss or impairment" of Lemma's bodily function. When viewed in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that the knife used by appellant was a deadly weapon because it caused serious bodily injury. Accordingly, we overrule appellant's first issue.

### *Factual Sufficiency*

While the evidence is legally sufficient, we nevertheless hold the evidence that Rivera used a deadly weapon – a weapon with the capacity to cause serious bodily injury or death – is so weak that the verdict is clearly wrong and manifestly unjust. *See Garza*, 213 S.W.3d at 38. Viewing the evidence in a neutral light, the evidence that Lemma suffered serious bodily injury as a result of a knife wound is meager and contradicted by evidence regarding the actual wounds. Although Lemma went to the hospital, it was in a private vehicle and was apparently after some delay. He received no medical treatment for his wounds other than the application of "stickers" in lieu of any stitches to close the wounds and an initial dose of pain medication. Although Lemma's testimony that the pain kept him from working for one month and his back still occasionally hurt him meets the test for legal sufficiency because of the requirement to view the evidence in the light most favorable to the

-6-

verdict, it would be clearly wrong and manifestly unjust to conclude serious bodily injury resulted from this fact alone under a factual sufficiency review. There is no evidence that Lemma sought or received any additional medical treatment for his wounds. Therefore, the finding of a deadly weapon cannot rest on proof that Lemma actually suffered serious bodily injury from the attack.

The State could have established the knife was a deadly weapon through evidence of the knife's size, shape, and sharpness; of the knife's life-threatening capabilities; the manner in which the knife was used; the words spoken by the defendant; the physical proximity between the victim and the knife; and the nature of any wounds caused by the knife. *See Lowe v. State*, 211 S.W.3d at 827. Clearly, Lemma's testimony that he was stabbed established the knife was used in a manner to take advantage of whatever life-threatening capabilities it may have possessed. However, neither the knife nor a facsimile of the knife used during the crime was introduced into evidence. None of the witnesses described the knife by its size or the length of the blade. In fact, the best witness for the State on this issue – Uribe – could only say she saw the light reflecting off the point of the "pocketknife".[1] She could not describe the size or length of the handle from which we might infer the length of the blade. There was no medical testimony as to the nature of the wounds or any testimony about the "life-threatening capabilities" of the knife based on the wounds inflicted. While Sergeant Mendoza testified he had some expertise on the nature of knife wounds and described some wounds as "gaping," he presented no testimony on whether the knife used in the attack was a deadly weapon.

---

[1]A pocketknife is defined by Webster's Ninth New Collegiate Dictionary as "a knife that has one or more blades that fold into the handle and that can be carried in the pocket." WEBSTER'S NEW COLLEGIATE DICTIONARY 907 (1984).

The dissent argues the evidence of a deadly weapon is factually sufficient citing Sergeant Mendoza's testimony about knives used as deadly weapons and "gaping" wounds "indicative of an aggravated assault," the finding of a blood trail, wounds that required medical attention, and multiplicity of wounds. While Sergeant Mendoza described some of the wounds as "gaping," no further explanation of that term was provided. There was simply no testimony about the size, length, or depth of any wound. His testimony about knives as deadly weapons was as follows:

> Q. Now in investigating, you stated, death scenes where a knife was used, is that what you –
>
> A. Yes sir. I've investigated a few scenes where a knife was used to – to kill somebody.
>
> Q. And in your experience dealing with that investigation, would it be your opinion that a knife can be a deadly weapon?
>
> A. Yes, sir, it can be employed as a deadly weapon as far as cutting somebody and – and puncturing their vital organs, which could mean they cut a carotid artery or something like that, yes, sir.
>
> Q. So that would depend on the manner of use?
>
> A. Yes, sir.

Sergeant Mendoza's testimony essentially stated that all knives can be deadly weapons depending upon the manner of use. However, he offered no testimony about the knife used in this case. His testimony that "I knew it was some sort of aggravated assault with some sort of weapon" appears to be based on the nature of the wounds rather than the type of weapon. In other words, he thought the wounds demonstrated serious bodily injury which, as discussed above, was not the case. And, that Lemma suffered some wounds does not compel a finding that the knife was a deadly weapon. *See Lockett v. State*, 874 S.W.2d 810, 814 n.3 (Tex. App.–Dallas 1994, pet. ref'd).

Viewed in a neutral light, the evidence that Rivera's weapon was capable of causing serious bodily injury or death is so weak as to render the jury's verdict on that issue clearly wrong and manifestly unjust and we must sustain appellant's second issue.

## CONCLUSION

The State failed to produce sufficient evidence in this case about the inherent nature or deadly capability of the weapon used to stab Lemma. Accordingly, we sustain appellant's second issue, reverse the trial court's judgment, and remand to the trial court for a new trial.

Steven C. Hilbig, Justice

PUBLISH