Opinion filed July 18, 2013



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00220-CR
_____

## JOSE DURAN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR37862**

## M E M O R A N D U M   O P I N I O N

The jury convicted Jose Duran of aggravated assault with a deadly weapon and, after finding that he had previously been convicted of two prior felony offenses, assessed his punishment at confinement for sixty years in the Institutional Division of the Texas Department of Criminal Justice.

Duran presents five issues on appeal: (1) the evidence was insufficient to support the verdict; (2) the conviction based on insufficient evidence denied Duran due process of law; (3) the State's comment during closing argument that the victim's wounds were "obviously caused by a knife" amounted to bolstering of a witness's testimony; (4) the State's remarks concerning the omission of an instruction on self-defense amounted to a comment on Duran's failure to testify; and (5) the State's suggestion that the jury should answer "yes" to the question whether the victim had been stabbed invaded the jury's province and was improper. We affirm.

*Background Facts*

Johnny Robertson met Jennifer Sackie where they worked at a landscaping company. Robertson moved in with Sackie and her common-law husband, Jose Duran. Sometime prior to the event in this case, Duran moved out to date another woman. Apparently, the three remained friends. Both Robertson and Sackie testified that they were "just" friends; they had no romantic involvement.

Robertson, Sackie, and Duran went to the Sundown Market in Midland around 8:00 a.m. on September 9, 2010. They bought at least two six-packs of beer. After drinking the beer, they walked toward the Soup Kitchen for lunch. Sackie stopped in Hidalgo Park, and Robertson and Duran went on to the Soup Kitchen. After the Soup Kitchen closed at 1:00 p.m., Robertson took a plate of food from the Soup Kitchen to Sackie who had remained in the park. Duran stayed at the Soup Kitchen, visiting with friends. Sackie ate her lunch and then went back to the Sundown Market to buy more beer, leaving Robertson in the park. While she was gone, Ricky Acosta arrived and sat nearby.

When Sackie returned to the park, Duran and others arrived. Duran and Sackie began arguing over money; Sackie claimed that Duran owed her forty dollars. When she told Duran not to call her a "bitch," Duran became angry.

Robertson tried to intercede, telling Duran to leave Sackie alone. Sackie said that she turned to visit with Acosta and walked toward the Soup Kitchen to cool down. Duran did not follow her, and he did not threaten her or show her a knife. Sackie admitted that she was intoxicated that day and that she did not see anyone with a knife.

As Sackie walked away, Duran approached Robertson (who was sitting down) and mumbled something. Robertson did not understand Duran and thought that Duran was patting him on the back. Robertson got up and started walking toward Acosta because he did not want to argue with Duran. Robertson said that, as Robertson walked toward Acosta, Duran stuck a knife to his throat and said, "I ought to kill you." Duran had followed behind Robertson and put his arm around Robertson's neck. Robertson felt a poke on his neck and felt blood "tingling" down his throat. Robertson testified that he was also stabbed in the back, side, and elbow. When he reached his hand to his back, his hand became bloody. He did not see the knife. Robertson remembered going in an ambulance to the hospital where they stitched and stapled his wounds.

Acosta witnessed the argument between Duran and Sackie, and said that Duran slapped her with his open hand. When Robertson intervened, Duran went to where Robertson was sitting and said, "You want some too?" Duran hit Robertson's back two or three times. Duran pulled a knife from his back pocket and stabbed Robertson in the back. As Robertson got up and came toward Acosta, Acosta saw Duran stab Robertson in the back again. Acosta described the knife as being six or seven inches in length with an open blade and a black handle. According to Acosta, when Robertson got by a garbage can, Duran "dagged" him again.

Acosta then told Duran to leave Robertson alone, and Duran left with the knife. Acosta said that Robertson did not have a knife and that he never saw

3

anyone stab Robertson other than Duran. When the police and the ambulance arrived a few minutes later, Acosta described Robertson as having a shirt with the back being full of blood.

Grady McGowan works for the City of Midland on a survey crew. He noticed a crowd around one of the tables in Hidalgo Park. He then saw a fight. The "big man" was striking the "little guy" on the head, and you could see his head "pop off the table." McGowan said that the big man was coming down on top of the little man from behind. McGowan could see that the big man was hitting the other man from the back, but McGowan was too far away to see if the big man had anything in his hand. As the big man left, McGowan followed him in his van. McGowan next saw him in police custody.

Officer Tony Jacquez with the Midland Police Department said that he received a dispatch to go to Hidalgo Park because of a stabbing there. When he arrived, he saw Robertson, who had been stabbed and was bleeding. Officer Jacquez saw fresh blood on the park table and on the ground. Officer Jacquez told Officer Aaron Smith, who had arrived first, to look for the suspect.

Officer Clark William Owen with the Midland Police Department was working traffic near Hidalgo Park, and he received a broadcast with the description of the suspect and the suspect's name. Almost immediately, Officer Owen saw the suspect walking away from the area of the assault. Officer Owen said that the suspect confirmed that he was Jose Duran. They were only two blocks from the park. Officer Owen noticed fresh blood on Duran's shirt, pants, and hands. Sergeant Richard W. Lewis with the Midland Police Department heard Duran identify himself to Officer Owen, and Sergeant Lewis also observed the blood on the palms of Duran's hands and the blood on his shirt and pants. The officers did not find a weapon on Duran. Sergeant Lewis called in a canine unit to help search for the knife, but it was never found.

4

Officer Owen contacted Officer Christopher Bryan Lumas because Lumas's patrol car had a prisoner cage in it. When Officer Lumas arrived, he saw that Officer Owen had Duran in handcuffs. Duran appeared to be intoxicated and smelled of alcohol. After being taken to the Midland County jail, Duran asked Officer Lumas, "So I've got a count of aggravated assault?" Officer Lumas told him yes. Duran then said, "I should've killed him." Officer Lumas did not say anything further and simply completed the booking process.

In viewing photographs of Robertson's injuries, the jury saw the laceration to the left side of Robertson's neck under his jaw, a stab wound to the midsection of his back, another stab wound to his lower left side, and a cut to his left elbow. Detective Charles Sims, who had taken the photographs, testified that the wounds shown in the photographs were consistent with stab wounds; they were still bleeding when he took the photographs. He based his opinion on his experience of observing stab wounds over the years.

The medical records described the stab wounds as having been closed with staples and sutures. In Dr. Lawrence A. Wilson's report to Robertson, he told Robertson that the stab wounds should be treated with care to avoid complications and to ensure complete recovery.

The jury took only thirty minutes to deliberate and return with its verdict of guilty.

*Sufficiency of the Evidence*

We review a challenge to the sufficiency of the evidence under the same standard, the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), regardless of whether it has been presented as a legal or a factual sufficiency challenge. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the

5

verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Under the above standard, all evidence, including circumstantial evidence, is considered. *Nguyen v. State*, 54 S.W.3d 49, 52 (Tex. App.—Texarkana 2001, pet. ref'd). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Duran argues that the evidence was insufficient because there was no knife or other weapon found in Duran's possession and because there was no testimony that any weapon used was capable of causing death or serious bodily injury. In addition, the only one who testified that he saw a knife was Acosta, and the State stipulated that he had previously been found to be mentally deficient. As to this additional argument, Duran has cited no case holding that a person who has been found to be mentally deficient cannot accurately describe what he or she observed as a witness. We are not aware of any such case. We found that Acosta's testimony was lucid and consistent with other descriptions of the stabbing. Acosta may have been the most sober one there; he said he only had one can of beer three hours earlier. Robertson was the only person who said he thought Acosta was intoxicated; however, Robertson drank a quart of beer before they went to the Sundown Market, and he then drank at least a six-pack. It is not surprising that Robertson did not feel much pain from the stabbings.

The indictment alleged that Duran did the following:

[D]id then and there intentionally, knowingly and recklessly cause bodily injury to Johnny Robertson by cutting and stabbing the said Johnny Robertson with a knife and a bottle and an object to the Grand Jury unknown, and the said JOSE DURAN did then and there use and

6

exhibit a deadly weapon, to-wit: a knife and a bottle and an object to the Grand Jury unknown, during the commission of the said assault.

As relevant to this case, the elements of an aggravated assault are that a defendant (1) intentionally, knowingly, or recklessly caused bodily injury to another and (2) used or exhibited a deadly weapon during the assault. TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011).

The jury was entitled to believe Acosta and his detailed description of Duran's aggravated assault on Robertson. Even without that testimony, the circumstantial and physical evidence was sufficient to prove Duran's assault: McGowan described Duran as the "big man" who was assaulting the "little guy" from behind; Detective Sims took police photographs that showed stab wounds that were confirmed by the medical evidence; Detective Sims identified the wounds as stab wounds; Robertson testified concerning the wounds from Duran stabbing him, his loss of blood, and Duran's statement ("I ought to kill you"); numerous officers saw fresh blood on Duran's hands and clothing; Duran told Officer Lumas that "[Duran] should've killed [Robertson]"; and the treating physician cautioned Robertson that the stab wounds were serious and needed to be treated with care.

A knife is not a deadly weapon per se. *Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983); *Limuel v. State*, 568 S.W.2d 309, 311 (Tex. Crim. App. 1978). Expert testimony is not required to prove a knife was used as a deadly weapon. *Davidson v. State*, 602 S.W.2d 272, 273 (Tex. Crim. App. 1980). The State may establish that a knife was capable of causing death or serious bodily injury through witness descriptions of the size, shape, and sharpness of the knife; the manner in which the knife was used; words spoken by the defendant; physical proximity between the victim and the knife; and the nature of any wounds caused

by the knife. *Lowe v. State*, 211 S.W.3d 821, 827 (Tex. App.—Texarkana 2006, pet. ref'd).

As shown in the *Background Facts* in this opinion, the State provided sufficient evidence to establish that the knife or weapon that Duran used was a deadly weapon. Acosta described the knife as being six to seven inches long with an open blade and stated that he saw Duran stab Robertson two or three times. Robertson testified that, "when [Duran] first stuck that knife up under my throat, [Duran] said, 'I ought to kill you.'" Robertson admitted that he did not see the knife, but he felt something at his throat that "[f]elt like metal." Robertson felt a poke in his neck and blood "tingling" down his throat. The back of Robertson's shirt was covered in blood. Duran told Officer Lumas, "I should've killed him." The medical evidence showed that the wounds were serious. It appears that Robertson was released early from the hospital by signing a consent form; medical personnel did not want to release him.

We overrule Duran's first issue. Because the evidence was legally sufficient to support the verdict, we also overrule Duran's second issue. Duran was not denied due process of law.

*The State's Comments During Closing Argument*

Duran failed to preserve his last three issues for appellate review. Generally, as a prerequisite to presenting a complaint for appellate review, an appellant must make a timely request, objection, or motion at the trial court level. *See* TEX. R. APP. P. 33.1; *Hull v. State*, 67 S.W.3d 215, 217 (Tex. Crim. App. 2002). The purpose of this requirement is to give the trial court and the State an opportunity to correct a mistake early in the proceeding. *Hull*, 67 S.W.3d at 217. This requirement applies even when the issue on appeal alleges a deprivation of due process. *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009); *see also*

*Hull*, 67 S.W.3d at 217. Nevertheless, we also find that Duran's last three issues lack merit.

In Duran's third issue, he argues that the State's comment during closing argument that the victim's wounds were "obviously caused by a knife" amounted to bolstering of a witness's testimony. We disagree. The prosecutor was simply summarizing the evidence and suggesting a reasonable deduction based on the evidence. That is proper argument. *Landry v. State*, 706 S.W.2d 105, 111 (Tex. Crim. App. 1985).

In Duran's fourth issue, he argues that the State's explanation of why there was no instruction on self-defense in the charge amounted to a comment on Duran's failure to testify. Again, we disagree. The State was explaining the charge to the jury. The State only commented that there was no instruction on self-defense because there was no evidence in this case that Duran was acting in self-defense. The comment was to remind the jury that Acosta, Robertson, and McGowan had described Duran as an aggressor who approached Robertson from behind. There was no evidence that Duran was defending himself. The comment was not an inappropriate argument.

In Duran's fifth issue, he argues that the State's suggestion to the jury that it answer "yes" to the question concerning whether the victim had been stabbed was improper because it invaded the province of the jury as trier of fact. The question was not in the charge; it was posed by the State during its reply argument. There was overwhelming evidence that Robertson had been stabbed by Duran. The State reminded the jury of the evidence showing that Duran was the one who stabbed Robertson multiple times. The State also reminded the jury that Duran had stated to Officer Lumas that "[Duran] should've killed [Robertson]." The comment was a summation of that evidence and a reasonable inference from the evidence. We overrule Duran's third, fourth, and fifth issues.

*This Court's Ruling*

We affirm the judgment of the trial court.


TERRY McCALL

JUSTICE


July 18, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.