# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-17-00748-CR

---

**Travis Marpoe, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 450TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-17-203375, THE HONORABLE BRAD URRUTIA, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Travis Marpoe of second-degree family-violence assault by strangulation with a prior conviction for an assault committed against his ex-girlfriend. *See* Tex. Penal Code § 22.01(a)(1) (defining assault as "intentionally, knowingly, or recklessly causing bodily injury to another"), (b-3) (elevating assault to second-degree felony if assault is committed against person whose relationship to or association with defendant is described by certain sections of Family Code, defendant has previous family-violence conviction, and assault is committed by strangulation or suffocation).[1] Appellant elected to have the trial court decide his punishment, *see* Tex. Code Crim. Proc. art. 37.07(2)(b) (providing for court assessment of

---

[1] At the time the instant assault offense was committed, second-degree family-violence assault by strangulation was codified in subsection (b-1) of the assault statute. *See* Act of May 25, 2009, 81st Leg., R.S., ch. 427, § 1, sec. 22.01, 2009 Tex. Gen. Laws 1022–23. We cite to the current version of the statute for convenience since the substance of the provision is the same.

punishment as default unless defendant elects in writing prior to voir dire to have jury do so), and the trial judge sentenced him to serve two years in the Texas Department of Criminal Justice. *See* Tex. Penal Code § 12.33 (establishing punishment range for second-degree felony). On appeal, appellant complains about error in the jury charge. We affirm the trial court's judgment of conviction.

## DISCUSSION

Appellant raises six points of error complaining about error in the trial court's jury charge. In his first three points of error, he complains about incorrect definitions of the culpable mental states in the abstract portion of the jury charge. In his last three points of error, he complains about the absence of various instructions related to self-defense.

### Standard of Review

A trial court is statutorily obligated to instruct the jury on the "law applicable to the case." *See* Tex. Code Crim. Proc. art. 36.14; *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018); *Arteaga v. State*, 521 S.W.3d 329, 334 (Tex. Crim. App. 2017). The jury charge should tell the jury what law applies and how it applies to the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). The trial court's duty to instruct the jury on the "law applicable to the case" exists even when defense counsel fails to object to inclusions or exclusions in the charge. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013) (citing *Taylor v. State*, 332 S.W.3d 483, 486 (Tex. Crim. App. 2011)). The trial court is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Mendez*, 545 S.W.3d at 552 (quoting *Delgado*, 235 S.W.3d at 249).

2

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Arteaga*, 521 S.W.3d at 333; *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury charge error). If the jury charge error has been properly preserved by an objection or request for instruction, reversal is required if the appellant has suffered "some harm" from the error. *Mendez*, 545 S.W.3d at 552 (citing *Almanza*, 686 S.W.2d at 171). If the charge error was not properly preserved, the error must be "fundamental" and requires reversal only if it was "so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Marshall*, 479 S.W.3d at 843 (citing *Almanza*, 686 S.W.2d at 171). "Under both harm standards, the appellant must have suffered some actual—rather than merely theoretical—harm." *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019). "The harm evaluation is case-specific." *Rogers v. State*, 550 S.W.3d 190, 192 (Tex. Crim. App. 2018) (citing *Cornet v. State*, 417 S.W.3d 446, 451 (Tex. Crim. App. 2013)).

**Culpable Mental States**

In his first three points of error, appellant complains about the trial court's definitions of the culpable mental states in the abstract portion of the jury charge. First, appellant asserts that the trial court erred by failing to properly tailor the definitions of the culpable mental states to the applicable conduct element of the charged offenses. Second, appellant argues that

the erroneous definitions authorized a conviction for family-violence assault by strangulation without requiring a finding beyond a reasonable doubt on the "essential element" of impeding the normal breathing or circulation of the blood of the victim. Relatedly, in his third point of error, appellant asserts that the errors in the abstract definitions of the culpable mental states "authorized a conviction without a unanimous finding on that essential element."

The Penal Code delineates three "conduct elements" that can be involved in an offense: (1) the nature of the conduct, (2) the result of the conduct, and (3) the circumstances surrounding the conduct. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989); *see* Tex. Penal Code § 6.03. The statutory definitions of the culpable mental state in a jury charge must be tailored to the conduct elements of the offense. *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015); *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994). A trial court errs when it fails to limit the definitions of the culpable mental states to the conduct element or elements involved in the particular offense. *Price*, 457 S.W.3d at 441; *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995); *Cook*, 884 S.W.2d at 491.

Ordinarily, assault is a Class A misdemeanor that occurs when one "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." Tex. Penal Code § 22.01(a)(1). However, such an assault may be elevated to a second-degree felony if the defendant commits the assault against a member of the defendant's family or household or a person with whom the defendant has or had a dating relationship, *see* Tex. Fam. Code §§ 71.0021(b) (defining "dating relationship"), 71.003 (defining "family" members), 71.005 (defining "household" members); the defendant has a prior family-violence conviction; and the defendant commits the assault "by intentionally, knowingly, or recklessly impeding the normal

4

breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth."  Tex. Penal Code § 22.01(b-3).

Assault causing bodily injury is a result-oriented assaultive offense.  *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008).  The Court of Criminal Appeals has concluded that third-degree-felony family-violence assault by impeding circulation or breathing is a result-of-conduct offense.  *Price*, 457 S.W.3d at 442–43.  We likewise conclude that second-degree family-violence assault by strangulation with a prior family-violence conviction is a result-of-conduct offense.  Although the offense includes elements that involve "circumstances surrounding the conduct"—the defendant's relationship to or association with the victim, *see id.* at 442 (observing that "dating relationship" was circumstance surrounding conduct), and the defendant's previous family-violence conviction, *see, e.g.*, *Ex parte Benson*, 459 S.W.3d 67, 81 (Tex. Crim. App. 2015) (observing that having two prior DWI convictions is "a circumstance-surrounding-the-conduct element" of felony DWI)—it cannot be committed without causing bodily injury.  *See Price*, 457 S.W.3d at 442 (observing that third-degree-felony family-violence assault by strangulation "cannot be committed without bodily injury" and "[t]he gravamen of assault with bodily injury is injury, a result of conduct"); *see also Garfias v. State*, 424 S.W.3d 54, 60 (Tex. Crim. App. 2014) (confirming that "an assaultive offense causing bodily injury is a result-oriented offense").

In this case, the abstract portion of the jury charge included the following definitions regarding the culpable mental states "intentionally," "knowingly," and "recklessly":

> A person acts intentionally, or with intent, with respect to *the nature of his conduct or* to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

5

A person acts knowingly, or with knowledge, with respect to *the nature of his conduct or* to circumstances surrounding his conduct when he is aware *of the nature of his conduct or* that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the defendant's standpoint.

(Emphases added.) As the emphasized portions show, the trial court's definitions of the culpable mental states of "intentionally" and "knowingly" were not tailored to the "result of the conduct" but instead included language regarding the "nature of the conduct." We agree that the language concerning the "nature of the conduct" should not have been included in the definitions, and, therefore, the trial court erred by including it.

Having found error in the jury charge, we must next consider whether appellant was harmed by the error. Appellant concedes that he did not object at trial to the definitions of the culpable mental states in the abstract portion of the jury charge. Thus, the jury charge error was not preserved, and reversal is required only if the error was "fundamental" in that it was "so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Marshall*, 479 S.W.3d at 843; *Almanza*, 686 S.W.2d at 171.

Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Arteaga*, 521 S.W.3d at 338; *Marshall*, 479 S.W.3d at 843; *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). "Egregious harm is a 'high and difficult standard' to meet, and such a

6

determination must be 'borne out by the trial record.'" *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)); *see Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013) ("[Egregious harm] is a difficult standard to meet and requires a showing that the defendants were deprived of a fair and impartial trial."). We will not reverse a conviction unless the defendant has suffered "actual rather than theoretical harm." *Marshall*, 479 S.W.3d at 843; *Villarreal*, 453 S.W.3d at 433.

In examining the record to determine whether jury charge error has resulted in egregious harm, we consider: (1) the entirety of the jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *Arteaga*, 521 S.W.3d at 338; *Marshall*, 479 S.W.3d at 843; *Almanza*, 686 S.W.2d at 171. The analysis is "fact specific and is done on a 'case-by-case basis.'" *Arrington*, 451 S.W.3d at 840 (quoting *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013)); *see Rogers*, 550 S.W.3d at 192 (affirming that harm analysis regarding jury charge error "is case-specific").

*Entirety of the Jury Charge*

In considering the jury charge as a whole, when the error involves a misstatement of the required culpable mental state, we "may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge." *Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994); *Cook*, 884 S.W.2d at 492 n.6. In this case, although the trial court gave incorrect definitions of the culpable mental states in the abstract portion of the charge, the court properly applied the law to the factual context and limited the culpable mental states to the result of appellant's conduct in the application paragraphs.

7

The trial court instructed the jury, in relevant part, to find appellant guilty of family-violence assault by strangulation if the jury "believe[d] from the evidence beyond a reasonable doubt" that, "as alleged in the indictment," appellant

> did then and there intentionally, knowingly or recklessly impede the normal breathing or circulation of blood of Shannon Scott by applying pressure to Shannon Scott's throat or neck by seizing her on or about the neck or throat with his hand or by stepping on her neck or throat with his foot.

Thus, the jury was instructed that it could convict appellant of the charged family-violence assault by strangulation only if it found that he had intentionally, knowingly, or recklessly caused the result—i.e., the impeding of Scott's breathing or the circulation of her blood. *See Marshall*, 479 S.W.3d at 844 (explaining that impeding another person's breathing is type of bodily injury); *Price*, 457 S.W.3d at 443 (observing that required injury of family-violence assault by strangulation is impeding of normal breathing or circulation of blood). This instruction is consistent with the statutorily prohibited conduct. *See* Tex. Penal Code §§ 22.01(a)(1), (b-3)(3).

Similarly, concerning the lesser-included offense of family-violence assault with a prior family-violence-assault conviction, the jury was instructed in the application paragraph to convict appellant of that offense (after rejecting the greater offense of family-violence assault by strangulation) if the jury believed beyond a reasonable doubt that appellant "did then and there intentionally or knowingly or recklessly cause bodily injury to Shannon Scott." Thus, even concerning the lesser-included offense, the jury was instructed that it could convict appellant of the lesser offense of family-violence assault with a prior conviction only if it found that he had intentionally, knowingly, or recklessly caused the result—i.e., bodily injury to Scott. As with the instructions for the greater offenses, this instruction is consistent with the statutorily prohibited

8

conduct of the lesser-included offense of family-violence assault with a prior conviction. *See id.* § 22.01(a)(1), (b)(2)(A).

We presume that the jury followed the instructions given. *See Miles v. State*, 204 S.W.3d 822, 828 (Tex. Crim. App. 2006); *Luquis v. State*, 72 S.W.3d 355, 367 (Tex. Crim. App. 2002); *Colburn v. State*, 966 S.W.2d 511, 519–20 (Tex. Crim. App. 1998); *Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996). For that reason, when the application paragraph of the jury charge correctly instructs the jury on the law applicable to the case, error in the abstract instruction is not egregious. *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *Gilbert v. State*, 494 S.W.3d 758, 768 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Kuhn v. State*, 393 S.W.3d 519, 529–30 (Tex. App.—Austin 2013, pet. ref'd); *see Patrick*, 906 S.W.2d at 493 ("We conclude that because the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions, no harm resulted from the court's failure to limit the definitions of culpable mental states to proving the conduct element of the underlying offense."); *Hughes*, 897 S.W.2d at 296 ("Although the definitions of 'intentionally' and 'knowingly' indiscriminately set forth the three alternative conduct elements, when those terms are viewed in their factual context, it becomes apparent which conduct element applies to which element of the offense.").

Because the application paragraphs of the jury charge correctly applied the culpable mental states to the result of the conduct of the alleged offenses, we conclude that consideration of the entirety of the jury charge weighs against a finding of egregious harm.

*State of the Evidence*

The second factor requires us to review the state of the evidence, including the contested issues and weight of probative evidence. *Villarreal*, 453 S.W.3d at 433. Under this factor, "we look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm." *Arrington*, 451 S.W.3d at 841.

At trial, Scott testified about the verbal argument between her and appellant that escalated to physical violence. She described the specific ways appellant inflicted injuries to her, which included putting both of his hands around her neck and applying pressure as well as putting his foot across her neck when she was on the ground and pressing down with his foot. Scott said that she "couldn't breathe," "saw stars," and "had ringing in her ears." She explained that afterward it hurt her throat to swallow and her ear would pop when she swallowed. She also testified that she lost her voice for two to three days.

Scott's description of the injuries was corroborated by the medical evidence at trial, which included testimony from the EMT who treated Scott at the scene after the assault. The EMT described the injuries that she observed on Scott—redness and swelling on both sides of her face and petechiae on both sides of her neck above her collarbone. She explained that petechiae is small round dots in an area where pressure has been applied that indicates the capillaries beneath the skin have burst. The EMT testified that petechiae is very common in strangulation, and that the petechiae on Scott's neck was bilateral (on both sides) in a place where Scott described appellant putting his hands around her neck when he choked her.

Additional evidence corroborated Scott's account of the assault and her injuries, including her neighbor's testimony and the responding police officers' testimony about their observations of Scott immediately after the assault. Scott's neighbor, who called 911 on Scott's

10

behalf, said that Scott was "rattled," "crying," "shaking," and was "red around her neck area and on her arms." The neighbor also indicated that the character of Scott's voice was "totally different" and that Scott had difficulty talking. The responding police officers testified that when they arrived on the scene Scott was "frantic[ally] crying" and "visibly upset." Both officers observed injuries on Scott, which included "abrasions, complaints of physical pain, and redness"—specifically, swelling under her right eye and redness on her chin, neck, and arms. In addition, one of the officers testified that Scott reported difficulty swallowing and told him that her ear would pop when she swallowed.

The testimony of the EMT, the neighbor, and the police officers was corroborated by photographs of Scott, which depicted Scott's injuries and her condition after the assault, and the EMS records admitted at trial.

The record reflects that the primary contested issue at trial was not whether appellant acted with the requisite culpable mental state when he impeded Scott's breathing or her blood circulation. Appellant's defenses were that he did not inflict that type of bodily injury at all and that he inflicted any injury on Scott when acting in self-defense. Appellant never claimed that he had inadvertently or accidentally strangled Scott or that he lacked the requisite mental state to commit the charged offenses. Instead, he maintained that any injuries Scott sustained resulted from him defending himself when he "woke up" to Scott hitting him in the forehead. In denying the alleged acts and claiming self-defense, appellant never indicated that he lacked the requisite culpable mental state to commit the charged offenses, nor did any evidence raise this inference. *See Penning v. State*, No. 03-14-00579-CR, 2016 WL 4628052, at *3 (Tex. App.—Austin Aug. 31, 2016, no pet.) (mem. op., not designated for publication) (observing that "[j]ustification defenses, including . . . self-defense, are based on the confession-and-avoidance

11

doctrine, which requires a defendant to admit the conduct—both the act or omission and the requisite culpable mental state—of the charged offense" (citing *Juarez v. State*, 308 S.W.3d 398, 401–04 (Tex. Crim. App. 2010)).

After reviewing the evidence and the contested issues at trial, we conclude that the state of the evidence weighs against a finding of egregious harm.

*Arguments of Counsel*

Under this factor, we consider whether any statements made during the trial by the prosecutor, the defense counsel, or the trial court may have exacerbated or ameliorated the error in the jury charge. *Arrington*, 451 S.W.3d at 844.

Regarding the arguments of counsel, the determination of whether appellant caused bodily injury to Scott by strangling or choking her hinged on the credibility of the divergent accounts of what transpired that night between appellant and Scott. Accordingly, the parties focused on the evidence corroborating or contradicting Scott's account of how the injuries were inflicted. Further, as appellant acknowledges, both parties' arguments discussed whether the evidence supported appellant's claim of self-defense. Neither party mentioned whether appellant had (or lacked) the requisite culpable mental state when he impeded Scott's breathing and blood circulation.

The only mention of the culpable mental states was when the State briefly referenced the culpable mental states in reviewing the paragraphs of the court's charge with the jury. The prosecutor indicated that she did not anticipate "much debate" about the mental states and declined to discuss them. In the remainder of argument, the prosecutor did not highlight or rely on the erroneous jury-charge definitions but instead focused on the two issues in dispute—

12

whether appellant inflicted the alleged injuries at all and whether he acted in self-defense—by discussing the evidence that demonstrated that appellant had impeded Scott's normal breathing or blood circulation.

In sum, we perceive nothing in the closing arguments, or other statements by the parties or the trial court during trial, to indicate that appellant was egregiously harmed by the erroneous definitions of the culpable mental states. The arguments of counsel weigh against a finding of egregious harm.

*Other Relevant Information in the Record*

As to the fourth factor, our review of the record has revealed additional relevant information to consider in the egregious harm analysis. Near the end of the State's voir dire, a venire member sought further information from the prosecutor about "intent." In response, the prosecutor explained,

> So the intent. What's required in terms of intent for me to prove this offense beyond a reasonable doubt. I've got three bites at the apple. Intentionally, knowingly or recklessly.
> Intentionally, I think everybody understands that. I intentionally did this to you.
> Knowingly is a sort of step below. *You may not have acted with a conscious desire to cause the result, but you were aware your conduct was reasonably certain to result in that end result.*
> And then recklessly is it's not just an accident. I mean, you're aware of a substantial and unjustifiable risk and you consciously disregard it. . . .

(Emphasis added.) The prosecutor did not discuss the culpable mental states of "intentionally" and "recklessly" in terms of any particular conduct element but, as the emphasized portion shows, did explicitly explain the culpable mental state of "knowingly" in terms of the "result of the conduct." This additional relevant evidence weighs against a finding of egregious harm.

13

*Conclusion Regarding Harm*

On this record, in view of the jury charge submitted, the state of the evidence and the contested issues, the arguments of counsel, and the other relevant information in the record, we cannot conclude that the jury charge error affected the very basis of the case, deprived appellant of a valuable right, or vitally affected the defensive theory. *See, e.g.*, *Jones v. State*, 229 S.W.3d 489, 494 (Tex. App.—Texarkana 2007, no pet.) ("[T]he intent of [appellant] in touching [the child victim], while it was a part of the State's required proof, was not a contested issue and consequently [appellant] could not be egregiously harmed by the definition of the intentional and knowing state of mind."); *Saldivar v. State*, 783 S.W.2d 265, 268 (Tex. App.— Corpus Christi 1989, no pet.) ("Where no defense is presented which would directly affect an assessment of mental culpability, there is no harm in submitting erroneous definitions of 'intentionally' and 'knowingly.'"). Accordingly, after reviewing the record and considering the relevant factors, we hold that the erroneous definitions of the culpable mental states in the abstract portion of the jury charge did not egregiously harm appellant. We overrule appellant's first three points of error.

## Apparent Danger

At the trial's conclusion, the court included a self-defense instruction in the jury charge but did not include a separate instruction for apparent danger. Appellant did not request such an instruction nor did he object to the omission of such an instruction. In his fourth point of error, appellant contends that the trial court erred in not giving, sua sponte, an apparent-danger instruction in addition to the court's self-defense instruction.

Apparent danger is a facet of self-defense. *Brooks v. State,* 548 S.W.2d 680, 684 (Tex. Crim. App. 1977), *disapproved on other grounds by Lugo v. State,* 667 S.W.2d 144, 147 (Tex. Crim. App. 1984). A person has the right to defend against apparent danger to the same extent as actual danger, provided he acts upon a reasonable apprehension of danger as it appears to him at the time. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996); *Dyson v. State,* 672 S.W.2d 460, 463 (Tex. Crim. App. 1984).

Because the trial court included a self-defense instruction in the jury charge, self-defense is the law applicable to this case. *See Vega*, 394 S.W.3d at 519 (recognizing that "once the jury is charged on a defensive issue, a flaw in that charge is error"). Thus, the trial court assumed the duty to administer that instruction correctly, and a flaw in the charge on this issue would be error. *Id.*; *see Mendez*, 545 S.W.3d at 553.

However, Texas courts have held that when a defendant claims self-defense, his rights are fully preserved—and the concept of "apparent danger" is properly presented—when a jury charge (1) states that a defendant's conduct is justified if he reasonably believed that the victim was using or attempting to use unlawful force against the defendant, and (2) correctly defines "reasonable belief." *See Valentine v. State*, 587 S.W.2d 399, 401 (Tex. Crim. App. 1979); *Bundy v. State*, 280 S.W.3d 425, 430 (Tex. App.—Fort Worth 2009, pet. ref'd); *Lowe v. State*, 211 S.W.3d 821, 825 (Tex. App.—Texarkana 2006, pet. ref'd); *see also Trevino v. State*, No. 11-17-00103-CR, 2019 WL 1716452, at *4–6 (Tex. App.—Eastland Apr. 18, 2019, no pet.) (mem. op., not designated for publication); *Smith v. State*, No. 02-16-00272-CR, 2017 WL 2979916, at *1–2 (Tex. App.—Fort Worth July 13, 2017, pet. ref'd) (mem. op., not designated for publication); *Bales v. State*, No. 12-16-00048-CR, 2017 WL 511891, at *2 (Tex. App.—Tyler Feb. 8, 2017, pet. ref'd) (mem. op., not designated for publication); *Brown v. State*,

15

No. 13-12-00672-CR, 2014 WL 1465033, at \*7 (Tex. App.—Corpus Christi Apr. 10, 2014, no pet.) (mem. op., not designated for publication). A separate instruction for apparent danger is not required when the charge adequately defines reasonable belief and explains when reasonable belief justifies the use of force. *See Valentine*, 587 S.W.2d at 401; *Bundy*, 280 S.W.3d at 430; *Lowe*, 211 S.W.3d at 825.

In support of his position that he was entitled to have the trial court include, sua sponte, a separate apparent-danger instruction with the instruction on self-defense, appellant cites to *Jones v. State*, in which the Court of Criminal Appeals concluded the lack of a jury instruction on apparent danger was error, *see Jones v. State*, 544 S.W.2d 139, 142–43 (Tex. Crim. App. 1976), and several courts of appeals' opinions that rely on *Jones*, *see Simpson v. State*, No. 12-17-00080-CR, 2018 WL 1863504, at \*2 (Tex. App.—Tyler Apr. 18, 2018, pet. granted) (mem. op., not designated for publication); *Torres v. State*, 7 S.W.3d 712, 714–15 (Tex. App.— Houston [14th Dist.] 1999, pet. ref'd). Three years after *Jones*, however, the Court of Criminal Appeals distinguished *Jones* and held that an additional charge on apparent danger was not required, when, as part of its jury charge on the law of self-defense, the court instructed the jury on the statutory definition of "reasonable belief." *Valentine*, 587 S.W.2d at 401. The court held that the concept of apparent danger was properly presented to the jury where the jury charge instructed that the defendant's conduct would be justified if he or she reasonably believed that the deceased was using or attempting to use unlawful deadly force against the defendant at the time of the offense and the trial court also defined the term "reasonable belief."[2] *Id.* The court

---

[2] "Reasonable belief" was defined in *Valentine*, consistent with the statutory Penal Code definition of "reasonable belief" then codified in Penal Code section 1.07(a)(31), as "a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant."

concluded that, by defining the term "reasonable belief" as it did, the trial court instructed the jury that a reasonable apprehension of danger, whether it be actual or apparent, is all that is required before one is entitled to exercise the right of self-defense against his or her adversary. *Id.*; *see Walters v. State*, 247 S.W.3d 204, 213 n.37 (Tex. Crim. App. 2007) (recognizing holding in *Valentine*); s*ee also Hamel*, 916 S.W.2d at 493 (observing that "[t]he term 'reasonably believes' . . . encompasses the traditional holding that a suspect is justified in defending against danger as he reasonably apprehends it"); *Semaire v. State*, 612 S.W.2d 528, 530 (Tex. Crim. App. 1980) (same).

Here, in accordance with the Penal Code, the trial court instructed the jury, in pertinent part, that "[a] person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." *See* Tex. Penal Code § 9.31(a). Also in accordance with the Penal Code, the trial court defined "reasonable belief" as "a belief that an ordinary and prudent person would have held in the same circumstances as the defendant." *See id.* § 1.07(a)(42). By doing so, "the [trial] court instructed the jury that a reasonable apprehension of danger, whether it be actual or apparent, is all that is required before one is entitled to exercise the right of self-defense against his adversary." *See Valentine*, 587 S.W.2d at 401; *see, e.g.*, *Goodson v. State*, No. 05-15-00143-CR, 2017 WL 1360193, at *15 (Tex. App.—Dallas Apr. 12, 2017, pet. ref'd) (mem. op., not designated for publication); *Glenn v. State*, No. 13-12-00462-CR, 2014 WL 895510, at *5 (Tex. App.—Corpus Christi Mar. 6, 2014, pet. ref'd) (mem. op., not designated for publication); *Cleary v. State*, No. 05-11-00040-CR, 2012

---

*See Valentine v. State,* 587 S.W.2d 399, 401 (Tex. Crim. App. 1979). In the instant case, the trial court used exactly the same definition. *See* Tex. Penal Code § 1.07(a)(42).

17

WL 987762, at *3 (Tex. App.—Dallas Mar. 26, 2012, pet. ref'd) (not designated for publication); *Dotson v. State*, 09-08-00323-CR, 2009 WL 5205359, at *2 (Tex. App.— Beaumont Dec. 30, 2009, pet. ref'd) (mem. op., not designated for publication); *Clark v. State*, No. 04-02-00551-CR, 2004 WL 1835732, at *7 (Tex. App.—San Antonio Aug. 18, 2004, pet. ref'd) (mem. op., not designated for publication).

Therefore, on this record, we conclude that the jury-charge instructions properly encompassed the theory of apparent danger and conclude that the trial court did not err by not submitting, sua sponte, a separate jury-charge instruction on "apparent danger." *See Valentine*, 587 S.W.2d at 401. We overrule appellant's fourth point of error.

**Presumption of Reasonableness**

In his fifth point of error, appellant contends that the trial court failed "to properly instruct jurors on 'the facts giving rise to the presumption' of a 'reasonable belief.'"

Penal Code section 9.31 creates a statutory presumption of reasonableness regarding a defendant's belief that force is immediately necessary to protect himself against another's use or attempted use of unlawful force that requires a jury to presume that the defendant's belief was reasonable under certain circumstances. Specifically, the statute provides that a defendant's belief that the force used against another person was immediately necessary "is presumed to be reasonable" if the defendant:

(1) knew or had reason to believe that the person against whom the force was used:

(A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;

18

(B) unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment; or

(C) was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery;

(2) did not provoke the person against whom the force was used; and

(3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

Tex. Penal Code § 9.31(a).

Appellant cites to language in the jury charge that appears to be derived from Penal Code section 2.05(a)(2), which requires the jury to be instructed on the permissive nature of any statutory presumption favorable to the State and how the presumption relates to the State's burden of proof. *See id.* § 2.05(a)(2). However, a review of the trial court's jury charge reveals that the trial court did not include any instruction on the statutory presumption of reasonableness. Nowhere in the jury charge did the trial court instruct the jury that, generally, a jury must presume that a defendant's belief that his use of force was immediately necessary to protect against another's use of unlawful force against him is presumed to be reasonable if the statutory requisites are met. Nor did the trial court instruct the jury specifically that it must presume that appellant's belief that his use of force was immediately necessary to protect against Scott's use of unlawful force against him was reasonable if the statutory requisites were met. No mention of or reference to the three requisites for the statutory presumption of reasonableness appeared anywhere in the jury charge.

19

The record suggests that discussions about the jury charge took place off the record. However, nothing in the record indicates whether appellant requested an instruction on the statutory presumption of reasonableness or whether the trial court intended to include such an instruction in the jury charge. All we can conclude from the record before this Court is that an instruction on the statutory presumption of reasonableness provided in section 9.31(a) was not included in the jury charge.[3] Consequently, we cannot conclude that the trial court erred in failing to instruct the jury on "the facts giving rise to the presumption."[4] We overrule appellant's fifth point of error.

**Unlawful Force**

In his final point of error, appellant contends that the trial court erred by failing to define "unlawful force" as used in the self-defense instruction. Appellant appears to argue that, based on evidence of Scott's behavior during the verbal altercation that preceded the assault, the trial court should have created an instruction for "unlawful force" incorporating the statutory definition of "unlawful," *see* Tex. Penal Code § 1.07(a)(48), the instruction relating to the defense of property, *see id.* § 9.41, and the elements of criminal trespass, *see id.* § 30.05.[5]

The Code of Criminal Procedure requires that instructions to the jury be limited to setting forth the law applicable to the case and that they not express any opinion as to the weight

---

[3] We offer no opinion as to whether appellant was entitled to an instruction on the statutory presumption of reasonableness based on the evidence at trial.

[4] We offer no opinion as to whether the cited language concerning the section 2.05(a)(2) instructions was error—and appellant makes no such claim here—other than to observe that, without the instruction on the statutory presumption of reasonableness, such language appears superfluous.

[5] Appellant does not provide the precise definition or instruction of "unlawful force" that he now claims the trial court should have given.

of the evidence. *Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015); *see* Tex. Code Crim. Proc. art. 36.14. The "law applicable to the case" includes the statutory definitions that affect the meaning of the elements of the offense. *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011); *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009). Thus, a trial court must communicate to the jury each statutory definition related to the charged offense. *See Villarreal*, 286 S.W.3d at 329.

However, "special, non-statutory instructions, even when they relate to statutory offenses or defenses, generally have no place in the jury charge." *Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012) (quoting *Walters*, 247 S.W.3d at 211). Consistent with the terms of Article 36.14, the Court of Criminal Appeals has explained that jurors should be permitted to "freely read [undefined] statutory language to have any meaning which is acceptable in common parlance." *Green*, 476 S.W.3d at 445 (quoting *Kirsch*, 357 S.W.3d at 650); *see also Medford v. State*, 13 S.W.3d 769, 771–72 (Tex. Crim. App. 2000) (explaining that "terms not legislatively defined are typically to be understood as ordinary usage allows, and jurors may thus give them any meaning which is acceptable in common parlance"). Further, a non-statutory instruction constitutes a prohibited comment on the weight of the evidence if that instruction (1) is not grounded in the Penal Code, (2) is covered by the general charge to the jury, and (3) focuses the jury's attention on a specific type of evidence that may support an element of an offense or a defense. *Walters*, 247 S.W.3d at 212; *see Kirsch*, 357 S.W.3d at 651.

Here, the instruction to define "unlawful force" that appellant now suggests should have been included in the jury charge was not part of the law applicable to the case. First, definitions relating to justification defenses are set forth in Penal Code section 9.01, which includes a definition for "deadly force" but does not define "force" or "unlawful force." *See*

21

Tex. Penal Code § 9.01. Appellant's suggested instruction is not grounded in the Penal Code. It is not a statutory definition relating to the charged offense; nor is it a statutory definition of the justification defense of self-defense. While the term "unlawful" is defined in the Penal Code, *see id.* § 1.07(a)(48), the phrase "unlawful force" is not. Moreover, the suggested instruction for defining "unlawful force" incorporates a separate and unrelated justification defense (the defense of property) and the elements of a separate and unrelated criminal offense (criminal trespass)—neither of which are included in the law applicable to the case.

Further, an instruction defining "unlawful force" consistent with appellant's suggestion would not be a neutral statement of the law regarding the statutorily undefined term of "unlawful force." Moreover, it would have impinged on the jury's fact-finding authority by "improperly tell[ing] the jury how to consider certain evidence before it." *See Walters*, 247 S.W.3d at 214. The suggested instruction would have improperly focused the jury's attention on a specific type of evidence—certain behaviors of Scott during the verbal altercation—that may support an element of the justification defense. Accordingly, appellant was not entitled to such an instruction. *See id.* ("[T]hough the parties may offer any evidence that would support or refute a finding of self-defense, the parties are not entitled to special, non-statutory jury instructions on how to consider or evaluate specific types of evidence introduced to prove or disprove that defense."); *see also Kirsch*, 357 S.W.3d at 651 ("With only limited exceptions, the trial court may not include an instruction that focuses the jury's attention on a specific type of evidence that may support a finding of an element of an offense."); *Bartlett v. State*, 270 S.W.3d 147, 152 (Tex. Crim. App. 2008) ("Even a seemingly neutral instruction may constitute an impermissible comment on the weight of the evidence because such an instruction singles out that particular piece of evidence for special attention.").

In this case, the jury charge used language as provided in the applicable statutory provision, and the additional instruction suggested by appellant was a non-statutory instruction to which he was not entitled. *See Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) ("Following the law as it is set out by the Texas Legislature will not be deemed error on the part of a trial judge." (citing *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994)). Therefore, we conclude that the trial court's failure to instruct, sua sponte, the jury on the definition of "unlawful force" as suggested by appellant was not error. We overrule appellant's sixth point of error.

## CONCLUSION

Having concluded that no reversible error exists in the jury charge, we affirm the trial court's judgment of conviction.

_____

Edward Smith, Justice

Before Chief Justice Rose, Justices Goodwin and Smith

Affirmed

Filed: October 10, 2019

Do Not Publish