**Opinion filed May 21, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00294-CR

_____

**ISAIAH RENTERIA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 70th District Court**

**Ector County, Texas**

**Trial Court Cause No. A-22-0995-CR**

**M E M O R A N D U M   O P I N I O N**

This appeal concerns the propriety of the provocation instruction in the trial court's charge. Here, a jury found Appellant, Isaiah Renteria, guilty of murder and assessed his punishment at imprisonment for sixty years in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 12.32(a) (West 2019), § 19.02(b) (West Supp. 2025). The trial court sentenced Appellant accordingly.

In his sole issue on appeal, Appellant challenges the trial court's submission of a provocation instruction.[1]  Specifically, he contends that: (1) the evidence did not establish one of the required elements to submit this instruction; and (2) the charge included unnecessary, confusing, or misleading instructions, which resulted in egregious harm.  We affirm.

## I. *Factual Background*

On April 15, 2022, Appellant drove his girlfriend to a local gas station to purchase alcoholic beverages.  Surveillance video footage shows Appellant waiting in a parked vehicle while his girlfriend went inside the store.  At some point, the victim, Shawnn McCracken, walked past Appellant's vehicle, but he did not interact with or otherwise acknowledge Appellant.  Appellant rolled down the driver's side window after McCracken walked by.  McCracken walked to the southeast side of the gas station parking lot and sat near a wall at the edge of the property away from the main entrance.  Appellant then rolled up the driver's side window.  Once Appellant's girlfriend returned to the vehicle, Appellant drove out of the parking lot through the north exit.

Instead of driving northbound toward his residence, Appellant turned around, drove southbound on the wrong side of the road, returned to the gas station parking lot through the south entrance, and drove to where McCracken was sitting.

---

[1]Within his sole issue, Appellant's brief raises sub-issues.  When an appellant raises multiple issues in a single point of error, the point of error is multifarious, and an appellate court may decline to address those matters.  *See Mays v. State*, 318 S.W.3d 368, 385–86, 390 n.82 (Tex. Crim. App. 2010).  However, we may address the issue in the interest of justice if we can determine, with reasonable certainty, the alleged error about which a complaint is made.  *See Davidson v. State*, 249 S.W.3d 709, 717 n.2 (Tex. App.—Austin 2008, pet. ref'd); *Marcum v. State*, 983 S.W.2d 762, 767 n.1 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd).  After diligently considering and liberally construing Appellant's briefing, we will address each of his discernable appellate complaints.  To the extent Appellant has attempted to raise issues in his brief other than those addressed in this opinion, we conclude that those issues have been waived as inadequately briefed, and we overrule them.  *See* TEX. R. APP. P. 38.1(i); *see also Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000); *Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995) ("From appellant's brief, we cannot discern his specific arguments, and we will not brief appellant's case for him.").

Appellant stopped the vehicle and opened his door toward McCracken. The surveillance video shows McCracken "lean" toward Appellant then walk toward the vehicle's open door. As McCracken approached Appellant's vehicle, he "froze" and stepped back slightly. Approximately one minute later, Appellant shot McCracken as he "lunged forward." Appellant then fled the scene.

Sergeant Donaciano Rocha with the Odessa Police Department (OPD) testified about his investigation of the shooting and his familiarity with the "homeless" population in Ector County. Sergeant Rocha stated that McCracken was not a person known by law enforcement to "always [be] in trouble." Sergeant Rocha noted that McCracken did not have any weapons in his possession at the time he was shot, and he observed "a bag that had some food, or some personal items belonging to [McCracken]" near McCracken's body. Another witness, Donald Easlon, also did not observe any weapons in McCracken's possession as he attempted to render aid to McCracken—approximately one minute and fifteen seconds after he heard the gunshots.

Two other witnesses, EJ and Chon Rodriguez, observed the shooting and testified about McCracken's demeanor prior to the murder. EJ testified that he saw McCracken outside of their apartment that day and recalled he had seen McCracken "a few times [before]. Just him being loud, obnoxious, just causing trouble." However, on cross-examination, EJ stated that he did not remember whether he saw McCracken that day before the shooting. Chon testified that he saw McCracken earlier that day when he walked by, but he did not recall any disruptive behavior exhibited by McCracken.

EJ and Chon each recorded a portion of the altercation on their cell phones. Their cell phone videos depict the altercation approximately ten to fifteen seconds after it began until it ended. In the videos, Appellant is seated in the driver's seat of

3

his vehicle with the door open; McCracken is standing a few feet away with his hands at his sides saying something about a "f-----g gun." Appellant yells at McCracken and says, "you ain't got s--t, b---h," and "b---h you looking at me . . . acting like you hard, b---h I'll blow your f------g head off." Appellant then tells McCracken, "You don't have anything to live for." McCracken says that "[I have] Jesus" to live for and pointed to the sky. Appellant responds "n---a f---k Jesus n---a." They inaudibly argue for approximately ten seconds before McCracken "lunges" toward the vehicle and Appellant shoots him.

After he fled, Appellant called 9-1-1 to report the shooting. In the 9-1-1 recording, Appellant claimed that the altercation began when McCracken "kept looking at him," so he opened the driver's door of his vehicle and asked McCracken "what's wrong . . . what's your problem[,] and why are you looking at me and talking s--t?" Appellant stated that McCracken then began "talking s--t" to him, so Appellant responded by "talking s--t" and telling McCracken to "step back." Appellant said that McCracken had already seen Appellant's firearm at this point, and McCracken asked Appellant, "what he was going to do [with the firearm]." McCracken then "lunged" and "hit" Appellant, so Appellant "started shooting" and fled.

OPD Corporal David Meisner spoke with Appellant after the shooting. Appellant said that McCracken struck him on the left side of his face. However, Corporal Meisner testified that he observed no signs of injury to Appellant. According to Corporal Meisner, Appellant said that "he pulled out his firearm and was displaying it to the guy that he shot before . . . anything ever happened to [Appellant]." Corporal Meisner's testimony was corroborated by OPD Detective Kara Thompson, who interviewed Appellant during her investigation.

4

Detective Thompson testified to the statements made by Appellant during his interview, a recording of which was admitted into evidence. When asked about the events that had transpired, Appellant stated, "[McCracken] was just looking and looking and put his hands up to I don't know what, I don't know if he wanted money." Appellant stated, "I opened the door to make it easier," and "[McCracken] just got mad I guess." Appellant stated that he "didn't know" if he asked McCracken if he needed money and McCracken took offense, but McCracken "started talking s-t" and "kept walking closer." Appellant stated that he told McCracken "to just back up, man, just leave [them] alone," and that he and his girlfriend "were going to leave." Appellant stated that McCracken "just started swinging and [Appellant] was in the car," and that he did not "know what happened because it was, it was too fast." When asked about the gun, Appellant stated that he pulled the gun out "to get [McCracken] away from [him]," and McCracken "didn't care" and was cursing at him while he told McCracken that they were going to leave. Appellant stated that he pointed the gun at McCracken when he kept walking toward Appellant; McCracken cursed at him, said, "f--k you, you're not going to do s--t" then "rushed [him] and he started swinging while [Appellant] was inside of the car."

Sergeant Rocha and Detective Thompson each testified that Appellant's version of events was not consistent with what was depicted on the surveillance videos.

A. *The Charge Conference*

At the charge conference, Appellant's trial counsel argued that the terms "provocation and provoke" should be defined in the charge so that the jury could assess Appellant's intent.[2] In support, counsel cited to *Elizondo v. State*, 487 S.W.3d

---

[2]Although Appellant does not raise this argument on appeal, we note that definitions for terms that are not statutorily defined are not considered to be the law applicable to the case under Article 36.14; thus,

185, 198 (Tex. Crim. App. 2016) and *Smith v. State*, 965 S.W.2d 509, 512–13 (Tex. Crim. App. 1998). Appellant's trial counsel also requested that two modifications to the proposed instructions be made, namely the inclusion of the following phrases: (1) "*did not reasonably intend to provoke* the person against whom the force was used" in lieu of "*did not provoke* the person against whom the force was used" in the presumption of reasonableness instruction; and (2) "*could have reasonably intended to provoke* the other's use, or attempted use, of unlawful force" in lieu of "*provoked* the other's use or attempted use of unlawful force" in the standalone provocation instruction as a limitation on Appellant's right of self-defense. No other objections to the form or content of the proposed charge were made. The trial court denied Appellant's requested changes to the instructions.

## II. *Standard of Review*

The purpose of the trial court's charge "is to inform the jury of the applicable law and guide them in its application to the case." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). Charge error stems from the denial of a defendant's right to have the trial court provide the jury with instructions that correctly set forth the "law applicable to the case." *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021) (quoting CRIM. PROC. art. 36.14). Because the trial court is obligated to correctly instruct the jury on the law applicable to the case, it is ultimately responsible for the accuracy of its charge and the accompanying instructions. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (citing *Delgado*, 235 S.W.3d at 249). Therefore, if the charge is erroneous, the error is subject to the appropriate harm analysis. *See Bell*, 635 S.W.3d at 645.

---

it is generally impermissible for the trial court to define such terms in its instructions. *Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007).

Reviewing complaints of charge error is a two-step process. *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022) (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). First, we must determine whether error exists. *Id.* If there is no error, our analysis ends. *Id.*; *Loza v. State*, 659 S.W.3d 491, 497 (Tex. App.—Eastland 2023, no pet.). However, if error does exist, we must decide whether the appellant was harmed and if the harm is sufficient to require reversal. *Cyr v. State*, 665 S.W.3d 551, 556 (Tex. Crim. App. 2022) (citing *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013)); *Ybarra v. State*, 621 S.W.3d 371, 384 (Tex. App.—Eastland 2021, pet. ref'd). The applicable standard of review to be utilized for charge error depends on whether the claimed error was preserved. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020).

If error exists and it is not preserved for our review, such as when the defendant or his trial counsel fails to assert proper objections to the trial court's charge or fails to request a proper instruction, we review the complained-of charge error under the *Almanza* "egregious harm" standard. *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Under this standard, we will reverse only if the error was so egregious and created such harm that the defendant was deprived of a valuable right and a fair and impartial trial. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Almanza*, 686 S.W.2d at 171. Further, if the trial court submits a charge based on a defensive issue, regardless of whether it does sua sponte or upon a party's request, but it fails to do so correctly, this is error that is also subject to review under the "egregious harm" standard. *See Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013).

The abstract paragraphs in the charge "serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge," *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012), while the application paragraphs apply the "pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations," *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). In the context of an abstract instruction, reversible error generally only occurs when the instruction is an incorrect or misleading statement of a law that "the jury must understand in order to implement the commands of the application paragraph." *Crenshaw*, 378 S.W.3d at 466.

## III. *Analysis*

Appellant asserts that the trial court erred by including a provocation instruction in its charge when the evidence did not establish the third *Smith* element.[3] *See Smith*, 965 S.W.2d at 512–13. Appellant asserts that his complaint on appeal was preserved by his trial counsel's request to change the phrasing in the trial court's provocation instruction and presumption of reasonableness instruction. Alternatively, Appellant argues that, if his provocation-instruction complaint was not preserved, as the State contends, the trial court's charge caused him egregious harm because it contained unnecessary instructions, was confusing or difficult to understand, and was "riddled with errors."

---

[3]Appellant raises multiple sub-issues within his sole issue contending that: (1) he preserved his charge error complaint when his trial counsel objected to the charge's inclusion of "provocation" at the charge conference; (2) the evidence did not support one of the three *Smith* elements which are required to support a provocation instruction; and (3) Appellant suffered "some harm" as a result of the trial court's erroneous inclusion of the provocation instruction.

A.  *Submission of a Provocation Instruction*

Appellant argues that there is insufficient evidence to establish his intent to provoke McCracken as a pretext for shooting and killing him; therefore, he contends the trial court erred when it submitted a provocation instruction under Section 9.31(b)(4). *See* PENAL § 9.31(b)(4).

In asserting self-defense, the use of force is justified "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a). In the same manner, the use of deadly force against another is justified under the above circumstances "if the actor would be justified in using force against the other under Section 9.31; and when and to the degree the actor reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force." *Id.* § 9.32(a). "'Deadly force' means force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01(3). A "reasonable belief" is a belief that would be held by an ordinary and prudent person in the same circumstances as the actor. *Id.* § 1.07(a)(42). Under certain circumstances, an actor's belief that deadly force was immediately necessary is presumed to be reasonable. *Id.* § 9.32(b).

The doctrine of provocation or "provoking the difficulty" provides that, if the defendant provoked the victim into attacking the defendant so that the defendant would have a pretext to kill or injure the victim, the defendant forfeits his right of self-defense. *Elizondo*, 487 S.W.3d at 198; *Smith*, 965 S.W.2d at 512–13; *see* PENAL §§ 9.31(b)(4), 9.32(a)(1). The trial court must instruct the jury on provocation when sufficient evidence supports a finding of the following three elements: (1) the defendant did some act or used some words which provoked the attack on him;

9

(2) such act or words were reasonably calculated to provoke the attack; and (3) the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the attacker. *Smith*, 965 S.W.2d at 513; *see also Engel v. State*, 630 S.W.3d 192, 200 (Tex. App.—Eastland 2020, no pet.).

A provocation instruction under Section 9.31(b)(4) acts as a "full restriction" or "total restraint" on the defendant's right to self-defense, whereas the term "provoke" as used in Section 9.32(b)(2) does not. *See Smith*, 965 S.W.2d at 512–13 ("[I]f the defendant employs provocation with intent to assault the victim, and provokes an attack and makes an assault, then self-defense is lost as to the assault."); *Powell v. State*, No. 04-24-00302-CR, 2025 WL 2793221, at *8–9 (Tex. App.— San Antonio Oct. 1, 2025, pet. ref'd) (mem. op., not designated for publication) (holding that the term "'[p]rovoke' under Section 9.32(b)(2) could potentially limit the presumption of reasonableness, but a jury could determine the presumption of reasonableness did not apply and still find that a defendant had a reasonable belief to act in self-defense.").

### 1. *Preservation of Error*

Appellant asserts that he preserved this issue for appellate review because: (1) his insistence on the "intent" language in the provocation instruction was effectively a proper and timely objection to the submission of this instruction; and (2) "[w]hile Appellant's request didn't explicitly challenge the provocation instruction," his objection was sufficiently specific to make the trial court aware of his complaint that the evidence did not support a finding of the third *Smith* element beyond a reasonable doubt, and his complaint is apparent from the context of his objection. *See Gonzalez v. State*, 616 S.W.3d 585, 591 (Tex. Crim. App. 2020) (citing TEX. R. APP. P. 33.1(a)). The State responds that Appellant failed to preserve

this issue for appellate review because his objection to the inclusion of the provocation instruction was not based on an insufficient evidence complaint; instead, Appellant objected only to the absence of the term "intended" in the instruction. We agree with the State.

To preserve a charge error complaint, there must either be a timely objection or request made to the trial court. *Vasquez v. State*, 919 S.W.2d 433, 435 (Tex. Crim. App. 1996). Because no "talismanic words" are needed to preserve error, the trial court must only be able to understand from the context what complaint is being made; therefore, a complaining party must present a specific, timely objection or motion to the trial court which states the specific grounds for the desired ruling. TEX. R. APP. P. 33.1(a)(1)(A); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021); *Burg v. State*, 592 S.W.3d 444, 448–49 (Tex. Crim. App. 2020); *Clark v. State*, 365 S.W.3d 333, 337 (Tex. Crim. App. 2012); *see* TEX. R. EVID. 103(a). Additionally, to preserve charge error, a "defendant may, by a special requested instruction, call the trial court's attention to error in the charge, as well as omissions therefrom, and no other exception or objection to the court's charge shall be necessary to preserve *any error reflected by any special requested instruction which the trial court refuses*." CRIM. PROC. art. 36.15 (West 2006) (emphasis added).

It is also well-settled that the complaint and arguments raised on appeal must comport with and correspond to the objections made, if any, to the trial court or they are waived. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (citing *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991)); *Dominguez v. State*, 474 S.W.3d 688, 699 (Tex. App.—Eastland 2013, no pet.); *see* TEX. R. APP. P. 33.1(a)(1)(A). As such, an objection asserted at trial on one ground cannot support a different contention on appeal. *Rezac v. State*, 782 S.W.2d 869,

870 (Tex. Crim. App. 1990); *Edwards v. State*, 97 S.W.3d 279, 287 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

Here, Appellant did not object to the submission of the provocation instruction itself. Rather, Appellant only requested to modify the instruction's language and for the trial court to define the terms "provocation" and "provoke" in its instructions. However, that specific argument is not advanced in his appellate briefing. Instead, Appellant limits his argument on appeal to contending that: (1) the trial court's submission of the provocation instruction was erroneous; and (2) he suffered "egregious harm" from "disorganized" wording and the submission of the "no duty to retreat," and "real and apparent danger," instructions. As such, Appellant's global complaint on appeal that it was error for the trial court to submit this instruction does not comport with the argument or objection that he made before the trial court, therefore, his complaint was not preserved. *See* TEX. R. APP. P. 33.1(a)(1)(A); *see also Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016); *Clark*, 365 S.W.3d at 339; *Arevalo v. State*, 675 S.W.3d 833, 845 (Tex. App.—Eastland 2023, no pet.).

Despite the lack of preservation, we must address the entirety of any alleged charge error raised by Appellant because "all alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *see also Loza*, 659 S.W.3d at 497.

### 2. *The Sufficiency of the Provocation Evidence*

Appellant argues that the trial court erred when it instructed the jury on provocation because the evidence is insufficient to establish his intent to provoke McCracken as a pretext for killing him. Appellant and the State each acknowledge that the evidence satisfies the first two *Smith* elements. *See Smith*, 965 S.W.2d at

513. Therefore, we only address whether the third *Smith* element is supported by the evidence.[4] *See id.*; *see also Engel*, 630 S.W.3d at 200; *Pham v. State*, 595 S.W.3d 769, 779 (Tex. App.—Houston [14th Dist.] 2019), *aff'd*, 639 S.W.3d 708 (Tex. Crim App. 2022).

Generally, "[a]n instruction on provocation should only be given when there is evidence from which a rational jury could find every element of provocation beyond a reasonable doubt." *Elizondo*, 487 S.W.3d at 197 (emphasis omitted) (quoting *Smith*, 965 S.W.2d at 514); *Engel*, 630 S.W.3d at 200. The trial court errs if it submits a "provoking-the-difficulty" instruction that is not supported by the evidence because doing so constitutes an unwarranted limitation on the defendant's right of self-defense. *Elizondo*, 487 S.W.3d at 197. As such, we must view the evidence in the light most favorable to giving the instruction and determine whether there is sufficient evidence from which a rational jury could have inferred and found each element of provocation beyond a reasonable doubt. *Smith*, 965 S.W.2d at 514.

To satisfy the third *Smith* element, there must be "some evidence from which a rational jury could find beyond a reasonable doubt that the act was done, or the words were used [by the defendant], for the purpose and with the intent that the defendant would have a pretext for killing the victim." *Elizondo*, 487 S.W.3d at 200. A defendant's action, even if it is wrongful and does indeed provoke an attack, will not subject the defendant to forfeiting his right to assert self-defense if the defendant did not intend for his conduct to have such an effect or be part of a scheme to harm the victim. *Id.* In this instance, under the third *Smith* element, the trial court's submission of the provocation instruction would be justified only if the evidence

---

[4]Nevertheless, we conclude that there is some evidence from which the jury could have rationally inferred and found beyond a reasonable doubt that Appellant's acts or words—whether taken alone or considered in conjunction with the relationship of the parties and other surrounding circumstances—actually caused the attack on him, were reasonably capable of causing the attack, or had a reasonable tendency to cause the attack. *See Elizondo*, 487 S.W.3d at 199.

showed that a rational jury could have reasonably found that Appellant possessed an intent to provoke McCracken so that he would have a pretext to harm McCracken under the guise of self-defense. *See id.* at 201.

We note that a provocation instruction is rarely found to be improper based on insufficient evidence supporting the third *Smith* element, unless the altercation involved strangers or circumstances in which it was not conceivable that the defendant orchestrated events for the purpose of gaining a pretext to harm the victim. *See Smith*, 965 S.W.2d at 518–19 (describing cases that illustrate the "exceptional and extraordinary situations" where a provocation instruction is unwarranted, noting that the current case fell "short of such a rarity"); *Engel*, 630 S.W.3d at 200.

Intent is a question of fact that is to be determined from all the circumstances, including a defendant's words, acts, and conduct that occur before, during, or after the provocation. *Elizondo*, 487 S.W.3d at 200. Acts of provocation alone can carry an inference of intent, and the defendant's actions during or after the provocation can illuminate his intent. *Engel*, 630 S.W.3d at 201. Further, a jury can rely only on circumstantial evidence to find provocative acts or words, but the evidence must create more than mere suspicion or speculation. *Id.*

According to Appellant, the third *Smith* element cannot be established because it is "impossible to fathom that [he] arranged this set of events to make McCracken attack him so [that] he could kill him," and because McCracken was a stranger to him. We disagree with Appellant's assessment of the evidence.

The surveillance videos captured the entire altercation between Appellant and McCracken and show that McCracken did not interact with Appellant prior to Appellant approaching him. The videos also show that Appellant's conduct indicate an intent to confront McCracken when he (1) turned his vehicle around after he initially exited the gas station parking lot, (2) drove on the wrong side of the road,

(3) returned to the gas station parking lot, (4) drove to the side of the gas station where McCracken was sitting, and (5) opened his vehicle's door toward McCracken. Further, it is apparent that, even though the windows to Appellant's vehicle were functional, he instead chose to open the driver's door toward McCracken during their initial encounter rather than rolling down the windows as he did earlier.

Sergeant Rocha and Detective Thompson testified that Appellant's version of events was inconsistent with the video evidence that they recovered in their investigation of the shooting. Sergeant Rocha also noted that McCracken was unarmed during the altercation and that he did not have a history of causing "trouble" in the community.

Chon testified that McCracken looked at him and EJ when he walked by prior to the altercation, but he did not state that McCracken was acting aggressively. And by Appellant's own account, he brandished his firearm and "displayed" it to McCracken "before anything ever happened," and he believed that McCracken was "aware" that he had the firearm during their altercation. McCracken's awareness of Appellant's firearm is further shown by the surveillance video—which shows that McCracken "froze" and took a step back from Appellant's vehicle—and from McCracken's statements that were recorded by EJ and Chon where he mentioned a "gun."

EJ's and Chon's cell phone video recordings also show that Appellant yelled multiple offensive phrases and obscenities at McCracken—including: "b---h you looking at me . . . acting like you hard, b---h I'll blow your f-----g head off." Thus, the videos of Appellant's actions prior to the altercation, along with Appellant's own admissions, support the reasonable inference that he intended to provoke McCracken by creating a circumstance where McCracken would lunge at or into Appellant's vehicle as a pretext for shooting him. While there is arguably some evidence

15

that would have permitted a rational jury to conclude that Appellant did not provoke McCracken with the intent to harm him—such as his phone call to 9-1-1 to report the shooting, or because they were strangers prior to the altercation—the jury was nonetheless entitled to weigh this conflicting evidence with the other evidence admitted at trial in considering whether Appellant intended to provoke the confrontation with McCracken. *See Benaffane v. State*, No. 01-15-00840-CR, 2017 WL 2117538, at *5 (Tex. App.—Houston [1st Dist.] May 16, 2017, pet. ref'd) (mem. op., not designated for publication).

We conclude that a reasonable interpretation of the evidence shows that Appellant sought out McCracken with the intention of provoking McCracken into attacking Appellant while he was seated in his vehicle, so that Appellant would have a pretext for inflicting harm upon McCracken. From this evidence, when viewed in the light most favorable to giving the instruction, we conclude that a rational jury could have logically inferred and found the third *Smith* provocation element beyond a reasonable doubt. *See Elizondo*, 487 S.W.3d at 200–02; *Smith*, 965 S.W.2d at 514; *see also Engel*, 630 S.W.3d at 200–01 (upholding the trial court's submission of a provocation instruction in its charge where the defendant said that he was going to "kick [the victim's] a-s," the defendant showed the victim that he was loading a weapon, and lunged toward victim); *Kelley v. State*, 968 S.W.2d 395, 401 (Tex. App.—Tyler 1998, no pet.) (holding that evidence that a defendant approached the victim's yard, brandished a gun, confronted the victim, and refused to leave supported a rational inference of intent to support a provocation instruction submission). Here, the provocation instruction submitted by the trial court was in proper form, accurately tracked the applicable statutory language, and is supported by the evidence. Therefore, the trial court did not err when it submitted this instruction in its charge.

### 3. *Asserted Confusion*

In his harm analysis, Appellant argues that he was harmed because the charge (1) was difficult to understand, (2) included unnecessary instructions for "no duty to retreat" and "real and apparent danger," and (3) failed to include a "simple" or "clear" instruction on the State's burden of proof. Because we have concluded that instructing the jury on provocation was not error, we need not address whether Appellant was harmed by the instruction. *See Campbell*, 664 S.W.3d at 245 (citing *Ngo*, 175 S.W.3d at 743). We will, however, dispense with the remaining charge complaints contained within Appellant's harm argument. Before we do, we note at the outset that Appellant did not request a self-defense instruction, which the trial court should, as it did here, submit whenever a statutory or justification defense is raised by the evidence. *Vega*, 394 S.W.3d at 519; *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007).

### i. *The Provocation Instruction*

Appellant contends that he was harmed by the inclusion of the provocation instruction in the charge because the charge "contains no headings," did not distinguish the provocation instruction from other self-defense instructions, and "bounces" between multiple Penal Code provisions in "no discernible order." In support, Appellant cites to the Texas Criminal Pattern Jury Charges (PJC). *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Criminal Pattern Jury Charges: Justification Defenses* PJC 9.23 (2024); *see also Cochran v. State*, 692 S.W.3d 891, 896 (Tex. App.—Dallas 2024, no pet.) ("Pattern jury charges are advisory [only] and not binding on the courts.").

"[I]t is the function of the charge to lead and to prevent confusion." *Reeves v. State*, 420 S.W.3d 812, 818 (Tex. Crim. App. 2013) (quoting *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977)). But it is also the trial court's paramount

17

duty to "maintain neutrality in providing such information and guidance" in its charge, above any subjective desire for including extratextual clarification. *Poor v. State*, 715 S.W.3d 15, 33 (Tex. App.—Eastland 2024, pet. ref'd) (quoting *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019)). Article 36.14 prohibits the charge from "expressing any opinion as to the weight of the evidence," and is designed to accomplish this neutrality. *See* CRIM. PROC. art. 36.14.

Generally, a charge that tracks the controlling statutory language is not erroneous. *See Casey v. State*, 215 S.W.3d 870, 887 (Tex. Crim. App. 2007). The relevant part of the charge of which Appellant now complains is stated below:

**SELF DEFENSE**

. . . .

You are further instructed as part of the law in this case and as a qualification on the law of self-defense, the use of force by a defendant against another is not justified if the defendant provoked the other's use or attempted use of unlawful force, unless the defendant abandoned the encounter, or clearly communicated to the other his intent to do so, reasonably believing he cannot safely abandon the encounter, and the other nevertheless continues or attempts to use unlawful force against the defendant.

The provocation instruction includes language derived from Section 9.31(b)(4). As set forth above, the trial court's provocation instruction was a correct recitation of the applicable law and was properly submitted. *See Casey*, 215 S.W.3d at 886–87 (holding that the trial court's charge was not erroneous where it set forth the law applicable to the case and accurately tracked the statute's required language); *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994); *see also Powell*, 2025 WL 2793221, at *8–9; *Gonzalez v. State*, No. 13-23-00025-CR, 2024 WL 2349321, at *11 (Tex. App.—Corpus Christi–Edinburg May 23, 2024, no pet.) (mem. op., not

designated for publication) (concluding that the trial court did not err by discussing provocation as an element of self-defense).

Because the charge accurately set forth the law applicable to this case, we overrule Appellant's sub-issue as to the organization of the charge. *See Reeves*, 420 S.W.3d at 817 n.29, 819.

### ii. *The "No Duty to Retreat" Instruction*

Next, in Appellant's harm analysis, Appellant complains that (1) the "no duty to retreat" provisions in Section 9.32 does not apply if the defendant provoked the person against whom force or deadly force was used, and (2) "[t]he inclusion of both the provocation statute *and* the 'no duty to retreat' language likely confused the jury." *See Morales v. State*, 357 S.W.3d 1, 6 (Tex. Crim. App. 2011); PENAL § 9.32(d) ("[I]n determining whether an actor . . . reasonably believed that the use of deadly force was necessary, a finder of fact may not consider whether the actor failed to retreat.").

We conclude that Appellant's argument fails for two reasons. First, the trial court's "no duty to retreat" instruction was the law applicable to the case because the evidence supported the submission of a provocation instruction. Second, this instruction accurately tracked the applicable statutory language in Sections 9.31 and 9.32. Here, the submitted "no duty to retreat" instruction focused on the *failure to retreat* rather than a general duty to retreat. *See Morales*, 357 S.W.3d at 6 (describing the 2007 statutory amendment which abrogated the general "duty to retreat" instruction, and holding that "the inclusion of a 'general duty to retreat'" instruction is erroneous); *see also Lozano v. State*, 636 S.W.3d 25, 31 (Tex. Crim. App. 2021); *Goble v. State*, No. 11-21-00174-CR, 2022 WL 17997042, at *3 (Tex. App.—Eastland Dec. 30, 2022, no pet.) (mem. op., not designated for publication) ([W]hile "the failure to retreat may be considered in determining whether a

defendant reasonably believed that his conduct was immediately necessary," it does not follow that the trial court must include a general "duty to retreat" instruction in its charge. (quoting *Morales*, 357 S.W.3d at 5)).

The Court of Criminal Appeals explained in *Morales* that the "no duty to retreat" provisions do not apply in circumstances where the defendant provoked the person against whom force or deadly force was used or if the defendant was engaged in criminal activity at the time. *Morales*, 357 S.W.3d at 5. "When these provisions do not apply, *the failure to retreat may be considered* in determining whether a defendant reasonably believed that his conduct was immediately necessary to defend himself or a third person." *Id.* (emphasis added). The court further noted that while no language in the current self-defense statutes call for determining whether a duty to retreat exists generally, "[t]here are only provisions that say, under specified circumstances, that a person is *not required to retreat*." *Id.* at 6 (emphasis added).

When the issue of self-defense is submitted to the jury in a case that involves deadly force, the jury must determine whether the defendant reasonably believed that deadly force was immediately necessary to protect himself from the other's use or attempted use of unlawful deadly force. PENAL § 9.32(a), (b). Thus, in this case, the question before the jury was the reasonableness of Appellant's belief that deadly force was immediately necessary in this circumstance. Section 9.32(d) provides that, in the jury's assessment of the reasonableness of a defendant's belief, the jury may not consider whether the defendant failed to retreat. *Id.* § 9.32(d). As such, Section 9.32(c) addresses the duty to retreat referenced in Section 9.32(d), and it focuses on the reasonableness of the defendant's belief. *See Dearing v. State*, No. 11-12-00105-CR, 2014 WL 2810121, at *3 (Tex. App.—Eastland June 12, 2014, no pet.) (mem. op., not designated for publication). The trial court should therefore instruct the jury that, when assessing the reasonableness of a defendant's

20

belief that deadly force was immediately necessary, it may not consider whether the defendant failed to retreat if he had a right to be present at the location where the conduct occurred, did not provoke the person against whom the deadly force was used, and was not engaged in criminal activity at the time. PENAL § 9.32(c), (d); *see Morales*, 357 S.W.3d at 5.

The entirety of the submitted "no duty to retreat" instruction, which followed the provocation instruction and the discussion of the differences while armed instruction, *see* PENAL § 9.31(b)(4), (b)(5)(A), is stated below:

> A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used, *is not required to retreat before using deadly force to defend himself or a third person*. If you find from the evidence that [Appellant] was such a person, or if you have a reasonable doubt thereof, in determining whether [Appellant] reasonably believed that the use of deadly force was necessary, *you may not consider whether the Defendant failed to retreat*.

(Emphasis added). We have previously addressed this language and concluded, as we do now, that this language is the correct statement of the law because it recites that a defendant is *not required to retreat* before using deadly force to defend himself. *See Goble*, 2022 WL 17997042, at *4 (holding that language stating that a defendant "is not required to retreat before using deadly force to defend himself or a third person" or that the jury "may not consider whether the Defendant failed to retreat" are correct statements of the law); *Dumas v. State*, No. 02-19-00071-CR, 2020 WL 3730790, at *8 (Tex. App.—Fort Worth July 2, 2020, pet. ref'd) (mem. op., not designated for publication) (collecting cases holding that the inclusion of the "no duty to retreat" instruction in the abstract portion of the charge is not error).

As such, the trial court's charge did not contain a general duty to retreat instruction. Thus, it was not error to submit the above instruction because it

21

accurately stated the law applicable to the case and allowed the jury, as the factfinder, to assess (1) whether Appellant provoked McCracken, (2) the reasonableness of Appellant's belief that the use of deadly force was necessary, and (3) the applicability of the presumption of reasonableness based on the evidence adduced at trial.

### iii. *Real and Apparent Danger Instruction*

Appellant next complains in his harm analysis that the trial court's instruction on "real and apparent danger" was "unnecessary and confusing" because the charge also defines "reasonable belief." Appellant cites to *Walters* and *Valentine* to assert that the "real and apparent danger" instruction has been held "to be unnecessary since 1979," and again cites to the PJC in support of his argument. *See Walters*, 247 S.W.3d at 212 n.37 (citing *Valentine v. State*, 587 S.W.2d 399, 401 (Tex. Crim. App. [Panel Op.] 1979)); Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Criminal Pattern Jury Charges: Justification Defenses* PJC 9.10 (2024).

To this point, the State contends that Appellant's argument is without merit because (1) he "provides no argument or authority explaining how the inclusion of this instruction was actually harmful to him," and (2) the inclusion of this language was beneficial to Appellant's argument that he was justified in using deadly force. *See Druery v. State*, 225 S.W.3d 491, 497–98 (Tex. Crim. App. 2007) (holding that an instruction regarding accomplice witnesses as a matter of fact was superfluous and could only benefit the defendant because it allowed the jury to consider additional corroborating evidence that would otherwise not be required). Indeed, most cases on this issue concern a trial court's refusal to instruct the jury on real and apparent danger based on defense counsel's request. *See, e.g.*, *Bundy v. State*, 280 S.W.3d 425, 429–30 (Tex. App.—Fort Worth 2009, pet. ref'd); *Lowe v. State*, 211 S.W.3d 821, 825 (Tex. App.—Texarkana 2006, pet. ref'd); *Medina v. State*, No. 05-

23-00285-CR, 2025 WL 1666768, at \*2 n.2, \*3 (Tex. App.—Dallas June 12, 2025, pet. ref'd) (mem. op., not designated for publication) (collecting cases); *Cleary v. State*, No. 05-11-00040-CR, 2012 WL 987762, at \*2–3 (Tex. App.—Dallas Mar. 26, 2012, pet. ref'd) (not designated for publication) (same).

In *Walters*, the court considered whether the defendant was entitled to a non-statutory instruction that informed the jury it could consider "prior verbal threats" in deciding the issue of self-defense, not an instruction on real and apparent danger. *Beltran De La Torre*, 583 S.W.3d at 617; *Walters*, 247 S.W.3d at 212–13. The court specifically stated that the propriety of the real and apparent danger instruction was not before it. *Walters*, 247 S.W.3d at 212 n.37.

In *Valentine*, the Court of Criminal Appeals held that "an additional charge on [real and] apparent danger *was not required*, when, as part of its charge on the law of self-defense, the [trial] court instructed the jury on the statutory definition of 'reasonable belief.'" *Walters*, 247 S.W.3d at 212 n.37 (citing *Valentine*, 587 S.W.2d at 401). In that case, the court held that "the concept of [real and] apparent danger" was properly submitted to the jury where the charge instructed that the defendant's conduct would be justified if he reasonably believed that the deceased was using or attempting to use unlawful deadly force against the defendant at the time of the shooting. *Valentine*, 587 S.W.2d at 401. Moreover, the court held that because the trial court properly defined the term "reasonable belief" as "a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant," this effectively instructed the jury on the concept of "a reasonable apprehension of danger, whether it be actual or apparent." *Id.* Thus, a separate instruction for real and apparent danger is not required when the charge adequately defines reasonable belief and explains when a reasonable belief justifies the use of force. *Id.* In other words, *Valentine* stands for the proposition that a separate real and apparent danger

23

instruction is not required absent the failure to define reasonable belief in the charge, not for the proposition that it is error for a trial court to include such an instruction. *Valentine*, 587 S.W.2d at 401.

The final two paragraphs of the charge contain the following language regarding "real and apparent danger":

> When a person is attacked with unlawful deadly force, or he reasonably believes he is under attack or attempted attack with unlawful deadly force by one or more persons, and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury to himself at the hands of such attacker or attackers, then the law excuses or justifies such person in resorting to deadly force by any means at his command to the degree that he reasonably believes immediately necessary, viewed from his standpoint at the time, to protect himself from such attack or attempted attack. It is not necessary that there be an actual attack or attempted attack, as a person has a right to defend his life and person from apparent danger as fully and to the same extent as he would had the danger been real, provided that he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and that he reasonably believed such deadly force was immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.

> In determining the existence of real or apparent danger, you should consider all the facts and circumstances in the case in evidence before you, together with all relevant facts and circumstances surrounding the use of force or deadly force, if any; the previous relationship existing between [Appellant] and [McCracken]; together with all relevant facts and circumstances going to show the condition of the mind of [Appellant] at the time of the occurrence in question, including any and all threats previously communicated to [Appellant] from the alleged injured party. In considering such circumstances, you should place yourselves in [Appellant's] position at that time and view them from his standpoint alone.

The trial court also defined "[r]easonable belief" as "a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant," which tracks the term's statutory definition. PENAL § 1.07(a)(42). As set out above, the

24

trial court accurately instructed the jury that Appellant would be justified in using deadly force against McCracken when and to the degree he reasonably believed that deadly force was immediately necessary to protect himself against McCracken's use or attempted use of unlawful deadly force. *See Strout v. State*, No. 14-23-00068-CR, 2024 WL 1404627, at *3–4 (Tex. App.—Houston [14th Dist.] Apr. 2, 2024, pet. ref'd) (mem. op., not designated for publication) (holding that a charge—which included substantively identical language to the charge that we have reviewed in this case—correctly informed the jury of the law of self-defense generally, including the use of deadly force in self-defense) (citing *Villareal*, 453 S.W.3d at 435). Furthermore, the charge asked the jury to decide whether Appellant was entitled to a presumption of reasonableness as to his asserted belief that his use of deadly force was immediately necessary. PENAL § 9.32(b); *Strout*, 2024 WL 1404627, at *4.

In this case, the instructions given accurately tracked the statutory standards and definitions that pertain to self-defense, deadly force, and reasonable belief, allowed the jury to consider all the circumstances in determining the reasonableness of Appellant's belief that his use of deadly force was immediately necessary, and thus preserved his right to assert self-defense. *See Bundy*, 280 S.W.3d at 430 (citing *Valentine*, 587 S.W.2d at 401). Therefore, the trial court did not err when it submitted this instruction.

### iv. *The State's Burden*

Finally, in his harm analysis, Appellant challenges the trial court's instruction on the burden of proof as it relates to the presumption of reasonableness instruction. Appellant also asserts in one sentence that the charge does not provide "the simple, clear instruction on the State's burden of proof" on self-defense. Appellant cites to the PJC for both assertions. Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Criminal Pattern Jury Charges: Justification Defenses* PJC 9.10 (2024).

Here, the charge discusses the presumption of reasonableness and the State's burden of proof on that issue. In fact, Appellant concedes that the trial court's recitation of the law on the presumption was correct, but he nonetheless complains that the submitted paragraph was erroneous because it was "wordy," used the word presumption eight times, and failed to instruct the jury that the State was required to prove that self-defense did not apply, even if the State proved that the presumption of reasonableness did not apply.

Generally, if the defendant produces some evidence to support his claim of self-defense, the State has "the burden of persuasion to disprove the raised defense." *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *see also Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991) (contrasting affirmative defenses and explaining how burdens shift for self-defense). The charge recites the following regarding the State's burden of proof, which is found immediately after the presumption of reasonableness instruction, but before the provocation instruction:

> This presumption applies unless the State proves beyond a reasonable doubt that the facts giving rise to the presumption do not exist. If the State fails to prove beyond a reasonable doubt that the facts giving rise to the presumption do not exist, you must find that the presumption exists. Even though you may find that the presumption does not exist, *the State must prove beyond a reasonable doubt each of the elements of the offense charged*.

(Emphasis added). An application sentence immediately followed, which stated:

> If you have a reasonable doubt as to whether the presumption exists, the presumption applies and *you must consider the presumption exists*.

(Emphasis added). While the language in the application sentence is a correct recitation of the applicable law, a word—that—appears to be omitted. However, this inconsequential oversight does not minimize the true meaning of this sentence.

26

We conclude that the above instruction accurately recited that it was the State's burden to prove beyond a reasonable doubt (1) that the facts giving rise to the presumption do not exist, and (2) all elements of the charged offense. Further, the charge instructed the jury, as it should, that "[u]nless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, or you further find from the evidence that the defendant acted in self defense as defined above you will find the defendant not guilty of MURDER." As with its other instructions, the trial court accurately recited the law applicable to the case.

Accordingly, we overrule Appellant's sole issue on appeal.

IV. *This Court's Ruling*

As we have discussed above, the trial court did not err in its charge submissions, as Appellant suggests. Thus, because there is no error, we need not engage in a harm analysis. *See Campbell*, 664 S.W.3d at 245 (citing *Ngo*, 175 S.W.3d at 743); *Loza*, 659 S.W.3d at 497 (citing *Kirsch*, 357 S.W.3d at 649).

Accordingly, we affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


May 21, 2026

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

27